[No. D037661. Fourth Dist., Div. One. June 26, 2002.]

LARS GENTRY et al., Plaintiffs and Appellants, v.
EBAY, INC., Defendant and Respondent.

818

## COUNSEL

Krause & Kalfayan, James C. Krause and Patrick N. Keegan for Plaintiffs and Appellants.

Cooley Godward, Michael G. Rhodes, Christopher R. J. Pace and Andrea S. Hoffman for Defendant and Respondent.

Wilmer Cutler & Pickering, Patrick J. Carome, Susan P. Crawford, Samir Jain and C. Colin Rushing for America Online, Inc., as Amicus Curiae on behalf of Defendant and Respondent.

Bill Lockyer, Attorney General, Richard M. Frank, Chief Assistant Attorney General, Hershel T. Elkins, Assistant Attorney General, Ronald A. Reiter, Judith A. Fiorentini and Seth E. Mermin, Deputy Attorneys General, for the Attorney General of California as Amicus Curiae.

## OPINION

**O'ROURKE, J.**—Lars Gentry, Henry Camp, Mike Hyder, James Conboy, William Pommerening, and Michael Osacky (appellants) appeal a judgment

of dismissal entered after the trial court sustained eBay, Inc.'s (eBay) demurrer to appellants' second amended complaint without leave to amend. In that pleading, appellants alleged eBay violated California's "Autographed Sports Memorabilia" statute (Civ. Code, § 1739.7) by failing to furnish a certificate of authenticity to persons who purchased autographed sports-related collectibles through its Web site. Appellants also alleged eBay was negligent and engaged in unfair business practices under the unfair competition law (UCL) (Bus. and Prof. Code, § 17200 et seq.) based on its failure to supply such certificates as well as its acts in distributing false certificates, permitting other false representations to be placed on its Web site, and making its own false or misleading representations. In part, the trial court ruled eBay was not a dealer within the meaning of Civil Code section 1739.7 and appellants failed to plead around the statutory immunity provided by section 230 of title 47 of the United States Code (hereinafter section 230), which otherwise protected eBay's conduct. Appellants contend the trial court erred in sustaining eBay's demurrers without leave to amend because (1) they sufficiently alleged eBay is an auctioneer that provides the requisite description of collectibles as being autographed within the meaning of Civil Code section 1739.7; and (2) section 230 does not preempt their causes of action against eBay.

We conclude appellants cannot state a cause of action against eBay under Civil Code section 1739.7 because their allegations reveal eBay did not sell or offer to sell the collectibles at issue. Additionally, we conclude imposition of Civil Code section 1739.7 liability on eBay in this particular case, as well as liability for negligence and violation of the UCL, is inconsistent with section 230 because appellants' causes of action ultimately hold eBay responsible for misinformation or misrepresentations originating with other defendants or third parties. Because appellants cannot maintain their Civil Code section 1739.7 claim, and section 230 otherwise immunizes eBay from civil liability under these circumstances, we affirm the judgment of dismissal.

### FACTUAL AND PROCEDURAL BACKGROUND

eBay promotes itself as the world's largest on-line marketplace for the sale of goods and services among its registered users.[1] It operates an Internet-based service in which it enables member sellers to offer items for

---

[1] Under Evidence Code section 459, we take judicial notice of the manner in which eBay describes its operations from its Web site at <http://www.ebay.com/community/aboutebay/overview/index.html> (as of June 26, 2002). The company "overview" page of its Web site provides in part: "eBay enables trade on a local, national and international basis. It features a variety of international sites, specialty sites, categories and services that aim to provide users

sale to member buyers in what eBay characterizes as either auction-style or fixed price formats. To better enable users to place items for sale on its site, eBay provides descriptions to its users under various product categories and subcategories. For sports items, eBay's Web site has a sports product category with the following subcategories: "Sports: Autographs"; "Sports: Memorabilia"; "Sports: Sporting Goods"' and "Sports: Trading Cards." eBay's "Sports: Autographs" subcategory is further organized into sub-subcategories to differentiate autographed sports collectibles by particular leagues.

In September 1995, various individuals embarked on a plan to sell faked autographed sports memorabilia to consumers. Specifically, Angelo Marino, Gloria Marino, Gregory Marino, John Marino and Kathleen Marino (the Marino defendants) purchased sporting goods items and photographs from retail stores, forged signatures of professional athletes upon them, and employed Wayne Bray and Donald Frangipani to produce false certificates of authenticity for the items. The Marino defendants then sold most of the forged items to Stanley Fitzgerald and Phil Scheinman, larger dealers who mostly used eBay auctions to eventually sell the forged items to consumers. Stanley Fitzgerald did business as "Stan The Man Memorabilia" and "Stan's Sports Memorabilia." Phil Scheinman did business as "Smokey's Sports-card, Inc."

Appellants are individuals who purchased forged autographed sports items including baseballs, photographs and autographed pieces of paper or "cuts," from Fitzgerald, Scheinman or the Marino defendants through eBay.[2]

Intending to act on behalf of all purchasers of autographed sports collectibles purchased through eBay from September 1, 1995, to the time of trial, appellants sued the Marino defendants, Bray, Frangipani, Fitzgerald,

with the necessary tools for efficient online trading in the auction-style and fixed price formats." (*Ibid.*)

[2]Appellants specifically allege that Camp, Hyder and Osacky purchased their forged items from Stanley Fitzgerald through eBay auctions. They allege that Dermody purchased forged items from Phil Scheinman through eBay auctions. Appellants allege Gentry purchased forged items having either a "Stan's Sports Memorabilia [certificate of authenticity]" or a "Donald Frangipani [certificate of authenticity]." We infer from these allegations that Gentry purchased his items either from Fitzgerald, who as indicated, was alleged to be doing business as Stan's Sports Memorabilia or from the Marino defendants, who according to appellants' allegations used Frangipani to create false certificates of authenticity. Appellant Pommerening alleges he purchased his forged baseball "through an eBay auction" without identifying the source of the faked autograph or certificate of authenticity. We similarly infer he purchased his item from either Fitzgerald or Scheinman from appellants' allegations that the Marino defendant sold most of their forged items through larger dealers, including Fitzgerald and Scheinman, who then sold their forged items to consumers via eBay.

Scheinman and eBay. Their first amended complaint asserted causes of action against eBay for negligence, violation of the UCL, violation of Civil Code section 1739.7 and injunctive relief. In that pleading, appellants alleged eBay, having identified itself as an auctioneer in press releases and provided a venue for auctions, "violated California law by either failing to provide a certificate of authenticity expressly warranting the [autographed sports memorabilia] or failing to insure that such a certificate was being provided by any other party to the auction." According to their allegations, during the class period, eBay auctioned thousands of items of sports memorabilia created by the Marino defendants, a substantial number of which were accompanied by fraudulent certificates of authenticity and "expert opinions" produced by Bray and Frangipani. eBay charged placement fees to dealers listing an item for auction, and success fees (percentage fees) when items were sold. Further, appellants alleged, eBay gave customers a false sense of confidence by maintaining a forum that permitted dealers and consumers to give positive or negative feedback to other dealers or consumers, giving endorsements to certain dealers based on the volume of sales and positive feedback ratings, and advising users it may suspend or terminate their account if it finds them to have engaged in fraudulent activity in connection with the Web site.

Appellants alleged that as early as 1996, eBay received numerous complaints from consumers and warnings from governmental agencies that a substantial amount of forged sports memorabilia was being auctioned on eBay, but eBay ignored the warnings and allowed the forged sports memorabilia scheme to continue in order to continue to reap millions of dollars in profits for itself.

eBay generally demurred to appellants' UCL, Civil Code section 1739.7 and injunctive relief causes of action. The trial court sustained the demurrers, granting appellants 10 days leave to amend in order to plead around the federal statutory immunity of section 230 as to their UCL claim and allege that eBay provided a description of items listed on its Web site as being autographed for purposes of their Civil Code section 1739.7 claim. The court sustained without leave to amend eBay's demurrer to appellants' cause of action for injunctive relief on the ground it was not an independently cognizable cause of action.

Appellants' second amended complaint added several new allegations. They alleged: "At all relevant times, eBay was a 'dealer' as defined in Civil Code section 1739.7(a)(4) in that, among other things, eBay engages in sales transactions, conducted by means of written exchanges, between eBay and its users. The written exchanges consist of a series of invitations for offers

for the purchase of collectibles made by eBay and offers to purchase made by eBay users and culminates in the acceptance by eBay of the highest or most favorable offer made by a participating user. eBay engages in the sale or offer for sale of autographed collectibles in or from this state. eBay provides descriptions of collectibles as being autographed as defined in Civil Code [*sic*]. It is undisputed that eBay has never furnished a [certificate of authenticity] with a collectible at the time of sale." Appellants further alleged eBay "tightly regulates the transactions it conducts" on its Web site, controls the content of its Web site by delisting items it deems questionable and filters the Web site to prevent items from being sold. They alleged eBay "provided descriptions of the sports items" as being autographed under the above-identified product categories and subcategories, including the subcategory "Sports: Autographs" and that, "[o]ftentimes, eBay provided a standardized description of these sports items ·with a photo."

In connection with their Civil Code section 1739.7 cause of action, appellants alleged: "During the class period, eBay, in selling or offering to sell to a consumer collectibles in or from this state, provided a description characterizing an item as being autographed. However, eBay has failed to furnish consumers with a [certificate of authenticity] containing the required disclosures and express warranties for collectibles auctioned through its services." Appellants sought to plead around the immunity of section 230 by alleging eBay was itself responsible for creating or developing information on its Web site, and that the information was not obscene or otherwise similarly objectionable.

eBay again demurred. With respect to the UCL and negligence causes of action, it argued appellants failed to plead around section 230's statutory immunity. As to the Civil Code section 1739.7 cause of action, eBay argued: (1) it is not a dealer and does not provide descriptions of specific collectibles within the meaning of Civil Code section 1739.7; (2) plaintiffs did not allege the items they purchased through eBay were sent from or received in the State of California; and (3) it could not be held liable for aiding and abetting sales under that statute. eBay presented the declaration of its associate general counsel, who explained the operation of eBay's Web site and specifically how items were assigned their general category designations. He averred that members who wished to place an item for sale on eBay would themselves choose the main category (e.g., "Sports") and subcategories (e.g., "Autographs") under which their item would be listed for sale. Thereafter, the Web site would prompt the seller to provide other information, including the title and description of the item. eBay requested that the court take judicial notice under Evidence Code section 452, subdivision (h) of the fact "[a] user listing an item for sale on eBay's web site selects the category and

subcategory under which her item will appear on eBay's web site." Appellants did not object to or otherwise oppose eBay's request.

The trial court granted eBay's unopposed request for judicial notice and sustained eBay's demurrers without leave to amend. It ruled appellants could not allege eBay "provides a description of that collectible as being autographed" within the meaning of Civil Code section 1739.7 because eBay's Web site only included category labels, which were not descriptions of specific collectibles and which were actually chosen by the user, not eBay. The court also concluded the statute was silent as to aiding and abetting liability. As for the negligence and UCL causes of action, it ruled appellants had not pleaded around the immunity provided by section 230. It thereafter entered a judgment of dismissal in eBay's favor. Appellants timely filed their notice of appeal.

## DISCUSSION

### I.  *Standard of Review*

■ "An appellate court's ' "only task in reviewing a ruling on a demurrer is to determine whether the complaint states a cause of action." ' [Citations.] The reviewing court assumes the truth of allegations in the complaint which have been properly pleaded and gives it a reasonable interpretation by reading it as a whole and with all its parts in their context. [Citations.] However, the assumption of truth does not apply to contentions, deductions, or conclusions of law and fact. [Citation.] Furthermore, any allegations that are contrary to the law or to a fact of which judicial notice may be taken will be treated as a nullity. [Citations.]" (*Gulf Ins. Co. v. TIG Ins. Co.* (2001) 86 Cal.App.4th 422, 429 [103 Cal.Rptr.2d 305].) A party may not avoid demurrer by suppressing facts, including those that are judicially noticeable, which prove the pleaded facts false. (*Cantu v. Resolution Trust Corp.* (1992) 4 Cal.App.4th 857, 877 [6 Cal.Rptr.2d 151].) Given that the principle at issue is that of " ' "truthful pleading," ' " the court also will consider such facts. (*Rodas v. Spiegel* (2001) 87 Cal.App.4th 513, 517 [104 Cal.Rptr.2d 439], citing *Cantu v. Resolution Trust Corp.*, at pp. 877-878, italics omitted.) Where the complaint's allegations or judicially noticeable facts reveal the existence of an affirmative defense, the "plaintiff must 'plead around' the defense, by alleging specific facts that would avoid the apparent defense. Absent such allegations, the complaint is subject to demurrer for failure to state a cause of action . . . . ' ' (Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2001) ¶ 6:179, p. 6-39, italics omitted, citing *Lee v. Escrow Consultants, Inc.* (1989) 210 Cal.App.3d 915, 917, 921-922 [259 Cal.Rptr. 117]; and *Spray, Gould & Bowers v. Associated*

*Internat. Ins. Co.* (1999) 71 Cal.App.4th 1260, 1266, fn. 4 [84 Cal.Rptr.2d 552].)

We do not review the validity of the trial court's reasoning, only the propriety of the ruling itself. (*Rodas v. Spiegel, supra,* 87 Cal.App.4th at p. 517.) If the factual allegations of the complaint state a cause of action on any available legal theory, the trial court's order of dismissal must be reversed. (*Quelimane Co. v. Stewart Title Guaranty Co.* (1998) 19 Cal.4th 26, 38 [77 Cal.Rptr.2d 709, 960 P.2d 513]; *Sindell v. Gibson, Dunn & Crutcher* (1997) 54 Cal.App.4th 1457, 1465 [63 Cal.Rptr.2d 594].)

Applying these standards, we review the sufficiency of appellants' pleadings to ascertain whether they state causes of action for violation of Civil Code section 1739.7, negligence, and violation of the UCL.

## II. Claim for Alleged Violation of the Autographed Sports Memorabilia Statute (Civ. Code, § 1739.7)

### A. The Statute

Civil Code section 1739.7, in title 1.1A, Autographed Sports Memorabilia, regulates the sale of autographed sports items, broadly termed "collectibles." (Civ. Code, § 1739.7, subd. (a)(2).[3]) The statute generally forbids dealers of collectibles from representing an item as a collectible "if it was not autographed by the sports personality in his or her own hand." (Civ.

---

[3]The statute defines a collectible as "an autographed sports item, including, but not limited to, a photograph, book, ticket, plaque, sports program, trading card, item of sports equipment or clothing, or other sports memorabilia sold or offered for sale in or from this state by a dealer to a consumer for five dollars ($5) or more." (Civ. Code, § 1739.7, subd. (a)(2).) It contains other definitions as follows:

" 'Autographed' means bearing the actual signature of a personality signed by that individual's own hand." (Civ. Code, § 1739.7, subd. (a)(1).)

" 'Consumer' means any natural person who purchases a collectible from a dealer for personal, family, or household purposes. 'Consumer' also includes a prospective purchaser meeting these criteria." (Civ. Code, § 1739.7, subd. (a)(3).)

" 'Description' means any of the following: [¶] (A) Any representation in writing, including, but not limited to, a representation in an advertisement, brochure, catalog, flyer, invoice, sign, or other commercial or promotional material. [¶] (B) Any oral representation. [¶] (C) Any representation included in a radio or television broadcast to the public in or from this state." (Civ. Code, § 1739.7, subd. (a)(5).)

" 'Promoter' means a person who arranges, holds, organizes, or presents a trade show featuring collectibles, autograph signings, or both." (Civ. Code, § 1739.7, subd. (a)(8).)

" 'Person' means any natural person, partnership, corporation, limited liability company, company, trust, association, or other entity, however organized." (Civ. Code, § 1739.7, subd. (a)(9).)

Code, § 1739.7, subd. (c); *Upper Deck Authenticated, Ltd. v. CPG Direct* (S.D.Cal. 1997) 971 F.Supp. 1337, 1346.) It also places various obligations on such dealers. Specifically, subdivision (b) of the statute requires dealers to provide certificates of authenticity of a prescribed form and content. It provides in part: "Whenever a dealer, in selling or offering to sell to a consumer a collectible in or from this state, provides a description of that collectible as being autographed, the dealer shall furnish a certificate of authenticity to the consumer at the time of sale. The certificate of authenticity shall be in writing, shall be signed by the dealer or his or her authorized agent, and shall specify the date of sale." (Civ. Code, § 1739.7, subd. (b).)

The statute defines a dealer as follows: " 'Dealer' means a person who is in the business of selling or offering for sale collectibles in or from this state, exclusively or nonexclusively, or a person who by his or her occupation holds himself or herself out as having knowledge or skill peculiar to collectibles, or to whom that knowledge or skill may be attributed by his or her employment of an agent or other intermediary that by his or her occupation holds himself or herself out as having that knowledge or skill. 'Dealer' includes an auctioneer who sells collectibles at a public auction, and also includes persons who are consignors or representatives or agents of auctioneers. 'Dealer' includes a person engaged in a mail order, telephone order, or cable television business for the sale of collectibles." (Civ. Code, § 1739.7, subd. (a)(4).)

B. *Business of Selling or Offering to Sell Collectibles*

Appellants contend they stated a cause of action against eBay under Civil Code section 1739.7 by alleging eBay is an auctioneer that engages in the sale or offer for sale of autographed collectibles in or from this state, provides descriptions of collectibles as being autographed, yet has never furnished the requisite certificates of authenticity under the statute.

eBay advances several arguments in support of the proposition appellants cannot, as a matter of law, allege it is a dealer within the meaning of Civil Code section 1739.7. Preliminarily, it maintains we must reject the majority of appellants' allegations—those parroting the language of the statute—as mere legal conclusions and focus upon those allegations that flesh out the details of the sales transactions. eBay argues the nonconclusory allegations of the second amended complaint, combined with judicially noticeable facts as to the operation of its Web site, demonstrate eBay (1) does not provide descriptions within the meaning of Civil Code section 1739.7 because it is actually the user who selects the product categories of his or her item for sale; and (2) does not sell or offer to sell collectibles because, as appellants

allege in other portions of their pleading, it is in fact the individual defendants who sold the forged items to appellants. We are persuaded by the latter argument.

As stated, liability as a dealer under Civil Code section 1739.7 requires that the dealer be exclusively or nonexclusively "in the business of selling or offering for sale collectibles in or from this state." (Civ. Code, § 1739.7, subd. (a)(4).) Here, appellants' specific allegations reveal eBay is not in the business of selling or offering to sell the collectibles at issue; rather, it is the individual defendants who sold the items to plaintiffs, using eBay as a venue. ▆ In reaching this conclusion, we acknowledge we are required to construe appellants' allegations liberally, with a view towards substantial justice between the parties. (Evid. Code, § 452; *King v. Central Bank* (1977) 18 Cal.3d 840, 843 [135 Cal.Rptr. 771, 558 P.2d 857]; *Skopp v. Weaver* (1976) 16 Cal.3d 432, 438 [128 Cal.Rptr. 19, 546 P.2d 307].) But this rule does not permit us to ignore long-established rules of pleading. Accordingly, we apply the rule that specific allegations control general pleadings. (*Careau & Co. v. Security Pacific Business Credit, Inc.* (1990) 222 Cal.App.3d 1371, 1389-1390 [272 Cal.Rptr. 387]; see also *Stowe v. Fritzie Hotels, Inc.* (1955) 44 Cal.2d 416, 422 [282 P.2d 890] [where there is any inconsistency between the specific allegations upon which a conclusion must be based and the conclusion, the specific allegations control]; *Clack v. State of California ex rel. Dept. Pub. Wks.* (1969) 275 Cal.App.2d 743, 748 [80 Cal.Rptr. 274], [where a fact is pleaded in general or conclusionary terms, followed by an inconsistent specific allegation, the latter controls].)

▆ The general allegation that eBay engages in the sale or offer for sale is irreconcilable with other, more specific allegations. These allegations describe the specific operations of the individual defendants, expressly stating that the sellers of the forged items were Fitzgerald or Scheinman through their respective business entities. As appellants alleged, the scheme began with the Marino defendants' conduct in faking autographs of celebrated sports figures on baseballs, photographs and other collectibles and forwarding those items to Fitzgerald or Scheinman, who then placed them for sale on eBay by, in part, designating the appropriate categories contained on the Web site.[4] These factual allegations control. "While inconsistent *theories* of recovery are permitted [citation] a pleader cannot blow hot and

---

[4]Describing the role of the "large-scale dealers" in the second amended complaint, appellants allege: "The Marino defendants sold most of their forged sports items to a number of large-scale dealers, each of whom had knowledge of the fraudulent nature of the items. The largest dealers included Defendants Fitzgerald and Scheinman. [¶] . . . Defendant Fitzgerald sold the forged sports items to consumers through his entities known as 'Stan's Sports Memorabilia' and 'Stan The Man Sports Memorabilia[]'[.] Most of Defendant Fitzgerald's offers and sales were effected through eBay auctions. [¶] . . . Defendant Scheinman sold the

cold as to the *facts* positively stated. [Citations.]" (*Manti v. Gunari* (1970) 5 Cal.App.3d 442, 449 [85 Cal.Rptr. 366].)

C.   *Section 230 Immunity[5]*

Notwithstanding our conclusion above, we additionally hold, under the facts presented, placing liability upon eBay for failing to provide a warranty under Civil Code section 1739.7 would be inconsistent with and hence preempted by section 230, which was incorporated by Congress into the final version of the Communications Decency Act (and the Telecommunications Act) of 1996. (See Sen.Rep. No. 104-230, 2d Sess., pp. 86-88 (1996); Pub.L. No. 104-104, § 509 (Feb. 8, 1996) 110 Stat. 56.) The operative provision of Section 230 states: "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." (47 U.S.C. § 230(c)(1).) The statute further provides:

"(e)   Effect on other laws [¶] . . . [¶]

"(3) State Law

"Nothing in this section shall be construed to prevent any State from enforcing any State law that is consistent with this section. *No cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with ·this section.*" (§ 230 (e)(1)(3), italics added.)

In *Zeran v. America Online, Inc.* (4th Cir. 1997) 129 F.3d 327 (*Zeran*), certiorari denied (1998) 524 U.S. 937 [118 S.Ct. 2344, 141 L.Ed.2d 712], the court held section 230, by its "plain language," created a federal immunity to any cause of action that would make interactive service providers liable for information originating with a third party user of the service. (*Id.* at p. 330.) "Specifically, § 230 precludes courts from entertaining claims that would place a computer service provider in a publisher's role. Thus, lawsuits seeking to hold a service provider liable for its exercise of a publisher's

---

forged sports items to consumers through his entity known as 'Smokey's Sportscard, Inc.' Most of Defendant Scheinman's offers and sales were effected through eBay auctions." Appellants allege that Camp, Hyder, Osacky and Dermody purchased their forged collectibles from either Fitzgerald or Scheinman through eBay auctions.

[5]Although eBay originally raised section 230's immunity only with respect to its demurrers to appellants' negligence and UCL causes of action, in its reply to appellants' opposition it asserted section 230 likewise extended to appellants' cause of action under Civil Code section 1739.7. On appeal, the parties have fully argued section 230's application to all of appellants' causes of action against eBay.

traditional editorial functions—such as deciding whether to publish, withdraw, postpone or alter content—are barred." (*Zeran, supra,* at p. 330.) Reiterating Congress's findings and policy statements in section 230(a), (b),[6] the court observed: "Congress recognized the threat that tort-based lawsuits pose to freedom of speech in the new and burgeoning Internet medium. The imposition of tort liability on service providers for the communications of others represented, for Congress, simply another form of intrusive government regulation of speech. Section 230 was enacted, in part, to maintain the robust nature of Internet communication and, accordingly, to keep government interference in the medium to a minimum. . . . [¶] None of this means, of course, that the original culpable party who posts defamatory messages would escape accountability. While Congress acted to keep government regulation of the Internet to a minimum, it also found it to be the policy of the United States 'to ensure vigorous enforcement of Federal criminal laws to deter and punish trafficking in obscenity, stalking, and harassment by means of computer.' [Citation]. Congress made a policy choice, however, not to deter harmful online speech through the separate route of imposing tort liability on companies that serve as intermediaries for other parties' potentially injurious messages." (*Zeran, supra,* at pp. 330-331.)

---

[6]Section 230 itself contains Congress's specific findings and policy statement:

"(a) Findings

"The Congress finds the following:

"(1) The rapidly developing array of Internet and other interactive computer services available to individual Americans represent an extraordinary advance in the availability of educational and informational resources to our citizens.

"(2) These services offer users a great degree of control over the information that they receive, as well as the potential for even greater control in the future as technology develops.

"(3) The Internet and other interactive computer services offer a forum for a true diversity of political discourse, unique opportunities for cultural development, and myriad avenues for intellectual activity.

"(4) The Internet and other interactive computer services have flourished, to the benefit of all Americans, with a minimum of government regulation.

"(5) Increasingly Americans are relying on interactive media for a variety of political, educational, cultural, and entertainment services.

"(b) Policy

"It is the policy of the United States-

"(1) to promote the continued development of the Internet and other interactive computer services and other interactive media;

"(2) to preserve the vibrant and competitive free market that presently exists for the Internet and other interactive computer services, unfettered by Federal or State regulation;

"(3) to encourage the development of technologies which maximize user control over what information is received by individuals, families, and schools who use the Internet and other interactive computer services;

"(4) to remove disincentives for the development and utilization of blocking and filtering technologies that empower parents to restrict their children's access to objectionable or inappropriate online material; and

"(5) to ensure vigorous enforcement of Federal criminal laws to deter and punish trafficking in obscenity, stalking, and harassment by means of computer." (§ 230(a), (b).)

Other courts have applied *Zeran*'s reasoning to bar not only defamation claims, but other tort causes of action asserted against interactive service providers. (See, e.g., *Kathleen R. v. City of Livermore* (2001) 87 Cal.App.4th 684, 692 [104 Cal.Rptr.2d 772] [Court of Appeal affirmed judgment of dismissal in city's favor holding a city was immune under § 230 from liability under state causes of action for misuse of public funds, nuisance and premises liability for library's acts in providing computers allowing access to pornography]; *Doe v. America Online, Inc.* (Fla. 2001) 783 So.2d 1010, 1013-1017 [following *Zeran* in concluding § 230 directly preempted Florida law in a negligence action based upon America Online, Inc.'s (AOL) distribution of information depicting child pornography; the court rejected the argument that allegations AOL knew or should have known about the distribution of such materials created liability distinct from that of any publisher]; *Schneider v. Amazon.com, Inc.* (2001) 108 Wash.App. 454 [31 P.3d 37] [Internet book vendor was immune from tort (negligent misrepresentation, interference with business expectancy) and contractual liability arising from allegedly false statements about the plaintiff and his business made by third parties in the book review section]; *PatentWizard, Inc. v. Kinko's Inc.* (D.S.D. 2001) 163 F.Supp.2d 1069, 1071-1072 [defamation liability]; *Ben Ezra, Weinstein, & Co. v. America Online, Inc.* (10th Cir. 2000) 206 F.3d 980, 984-985; *Doe One v. Oliver* (2000) 46 Conn.Super. 406 [755 A.2d 1000, 1003-1004] [barring claims for negligence, negligence per se, failure to prevent transmission of e-mail in violation of a Connecticut statute, intentional nuisance and infliction of emotional distress based upon sending of on-line e-mails]; *Blumenthal v. Drudge* (D.D.C. 1998) 992 F.Supp. 44, 49-52 [barring defamation claims against AOL for statements made in the Drudge Report, an on-line gossip column, even though AOL had contracted for the reports, retained certain editorial rights as to its content, and aggressively promoted the report; the court expressed sympathy with the plaintiff but concluded Congress had made a policy choice to provide immunity "even where the interactive service provider has an active, even aggressive role in making available content prepared by others"].)

Section 230(c)(1) thus immunizes providers of interactive computer services (service providers) and their users from causes of action asserted by persons alleging harm caused by content provided by a third party. This form of immunity requires (1) the defendant be a provider or user of an interactive computer service; (2) the cause of action treat the defendant as a publisher or speaker of information; and (3) the information at issue be provided by another information content provider.

Appellants concede for purposes of this appeal that eBay is an interactive computer service provider.[7] And appellants do not expressly challenge the application of section 230 to liability based on content placed on eBay's Web site by eBay's users or other third parties. Rather, they contend section 230 does not apply because they seek to enforce eBay's independent duty under the statute to furnish a warranty as the " 'provider' of descriptions," not as a publisher. We disagree.

The substance of appellants' allegations reveal they ultimately seek to hold eBay responsible for conduct falling within the reach of section 230, namely, eBay's dissemination of representations made by the individual defendants, or the posting of compilations of information generated by those defendants and other third parties. Under section 230, eBay cannot be "treated as the publisher or speaker" of content supplied by other information content providers. (§ 230 (c)(1).)  ▮▮▮ If by imposing liability under Civil Code section 1739.7 we ultimately hold eBay responsible for content originating from other parties, we would be treating it as the publisher, viz., the original communicator, contrary to Congress's expressed intent under section 230(c)(1) and (e)(3).[8]

▮▮ In connection with appellants' argument relating to the sufficiency of their Civil Code section 1739.7 cause of action, appellants point out they

---

[7]The statute defines the term "Interactive computer service" as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet and such systems operated or services offered by libraries or educational institutions." (§ 230(f)(2).) The term "Information content provider" is defined as "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service." (§ 230(f)(3).) Even if appellants had not conceded the issue, the allegations of the second amended complaint indicate eBay's Web site enables users to conduct sales transactions, as well as provide information (feedback) about other users of the service. In this way, eBay provides an information service that enables access by multiple users to a computer server and brings it within the broad definition of an interactive computer service provider. (Cf. *Schneider v. Amazon.com, Inc., supra,* 31 P.3d at p. 40 & fn. 13 [noting Amazon.com's Web site permitted visitors to comment about authors and their work and thus provided an information service that necessarily enabled access by multiple users to a service].)

[8]"Preemption of state law by federal law is found in 'three circumstances.' [Citations.] [¶] First, there is so-called 'express preemption': 'Congress can define explicitly the extent to which its enactments pre-empt state law.' [Citations.] [¶] Second, there is so-called 'field preemption': '[S]tate law is pre-empted where it regulates conduct in a field that Congress intended the Federal Government to occupy exclusively.' [Citations.] [¶] Third, there is so-called 'conflict preemption': '[S]tate law is pre-empted to the extent that it actually conflicts with federal law.' [Citations.] Such conflict must be 'of substance and not merely trivial or insubstantial.' [Citation.] It exists when it is 'impossible . . . to comply with both state and federal requirements' [citations] or when state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives' underlying federal law [citations]. Although 'state law is pre-empted to the extent that it actually conflicts with

alleged eBay provided its own descriptions of collectibles through its lists of product categories, but also assert, to the extent the individual defendants created the ultimate descriptions of their faked collectibles, eBay provided those descriptions within the meaning of the statute by making them available to the users of its Web site. In opposition to eBay's demurrer, they argued: "It does not matter under [Civil Code section] 1739.7 who 'creates' the original specific description of the memorabilia, because the obligation to furnish a warranty arises when a dealer 'provides' the description in offering or selling the item and the description characterizes the item as being autographed. . . . Therefore, although the specific description of an item originates with the seller, eBay, by making the description available over its auction website . . . , then 'provides' the description to its consumers."

While the fact eBay does not create the description may be of no significance to liability under Civil Code section 1739.7 as appellants maintain, it is highly significant for purposes of assessing the application of section 230. Appellants do not dispute the fact, judicially noticed by the trial court,[9] that it was dealers Fitzgerald and Scheinman, not eBay, who chose their own category description for the item offered for sale. Thus, for purposes of applying section 230 immunity, we consider it was the individual defendants who falsely identified the product as authentically autographed in order to place their items on eBay for sale. On the basis of appellants' allegations, holding eBay responsible for providing a warranty under Civil Code section 1739.7 when it merely made the individual defendant's false product descriptions available to other users on its Web site, or provided the Web site on which the individual defendants designated their collectibles as autographed, puts eBay in the shoes of the individual defendants, making it

federal law' [citation], it is preempted only to that extent and no further [citation]." (*Peatros v. Bank of America* (2000) 22 Cal.4th 147, 157-158 [91 Cal.Rptr.2d 659, 990 P.2d 539].) These three circumstances should not be viewed as rigid categories. (See *English v. General Electric Co.* (1990) 496 U.S. 72, 78 [110 S.Ct. 2270, 2275, 110 L.Ed.2d 65]; *Peatros v. Bank v. America, supra,* 22 Cal.4th at p. 158, fn. 1; *Smiley v. Citibank* (1995) 11 Cal.4th 138, 148, fn. 3 [44 Cal.Rptr.2d 441, 900 P.2d 690]), and indeed, they may overlap at times. (See *English v. General Electric Co.,* at pp. 79-80, fn. 5 [110 S.Ct. at p. 2275] ["[F]ield pre-emption may be understood as a species of conflict pre-emption . . . ."].) Here, Congress has made a clear expression of intent to preempt state law, but only to the extent the state law is inconsistent or conflicts with section 230. As indicated, subdivision (e)(3) of section 230 provides, "[n]o cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section." Thus, the relevant inquiry in this case is not whether section 230 preempts inconsistent state laws—Congress has manifestly stated it does—but what is the scope of section 230's reach for purposes of assessing its preemptive effect.

[9] We need not reach the question of whether the operation of eBay's Web site is a matter for which judicial notice is appropriate. As indicated, the court granted eBay's unopposed request for judicial notice and appellants do not challenge that action on appeal. Any objection on this point has been waived. (*Younan v. Caruso* (1996) 51 Cal.App.4th 401, 406, fn. 3 [59 Cal.Rptr.2d 103].)

responsible for their publications or statements. We therefore conclude enforcement of appellants' Civil Code section 1739.7 cause of action is inconsistent with section 230 because it would " 'stand[] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.' " (*English v. General Electric Co., supra*, 496 U.S. 72, 79 [110 S.Ct. 2270, 2275].)[10]

### III. *Negligence Cause of Action*

■ Apart from the cause of action under Civil Code section 1739.9, which we have held is barred, appellants' negligence cause of action is based on allegations that eBay itself misrepresented the safety of purchasing items from the individual defendants and knew or should have known the individual defendants were conducting unlawful practices but failed to ensure they comply with the law. In an attempt to plead around section 230 with respect to these causes of action, appellants generally allege eBay was an information content provider in that it was responsible for the creation of information, or development of information, for the online auction it provided through the Internet; that eBay did not act as an Internet service provider; and the information at issue (descriptions of collectibles as autographed) did not concern the publication of obscene or similarly objectionable materials.[11]

These conclusory and argumentative allegations are followed by more specific averments. Appellants more specifically described the information purportedly developed by eBay for its "safety program," identifying it as

---

[10]The Attorney General of California filed an amicus curiae brief in this matter contending section 230 should not be read so broadly as to grant immunity to eBay against appellants' claims. We granted AOL leave to file another amicus curiae brief. Urging us to consider the legislative history of section 230, the Attorney General argues we must reject *Zeran* and its progeny and hold it does not immunize interactive computer service providers that act as distributors, that is, who publish information that they know to be false, fraudulent, defamatory, obscene, unlawful or otherwise objectionable. We are of the view that the very language used by Congress in stating section 230's goals reflects the breadth of the statute's purpose, i.e., "to promote the continued development of the Internet and other interactive computer services and other interactive media" and to "preserve the vibrant and competitive free market that presently exists for the Internet and other interactive computer services, unfettered by Federal or State regulations." (§ 230(b)(1), (2).) Such language does not reflect the limitations proposed by the Attorney General. The plain effect of Congress's words is to shelter service providers for providing access to another's offensive or objectionable information: "any information provided by another . . . ." (§ 230(c)(1).)

[11]We note the fact appellants allege eBay is an information content provider is irrelevant if eBay did not itself create or develop the content for which appellants seek to hold it liable. It is not inconsistent for eBay to be an interactive service provider and also an information content provider; the categories are not mutually exclusive. The critical issue is whether eBay acted as an information content provider with respect to the information that appellants claim is false or misleading.

consisting of a color-coded star symbol, a Power Sellers endorsement, and a Feedback Forum. Appellants alleged: "eBay encourages its users to rely upon its 'Feedback Forum' prior to engaging in a sales transaction. The Feedback Forum purportedly *allows dealers and consumers* to rate a sales transaction with a compliment (a 'Positive Feedback'), a criticism (a 'Negative Feedback'), or other comments (a 'Neutral Feedback'). eBay has advertised that, 'A positive eBay rating is worth its weight in gold.' A dealer or consumer who achieves a designated level of Positive Feedback is awarded a star symbol display next to the user name, which is color coded to indicate the amount of Positive Feedback received by the user. [¶] . . . In addition to the Feedback Forum, eBay designed a 'Power Sellers' endorsement, which purportedly is an award given to select eBay dealers based on the volume of sales and Positive Feedback ratings. [¶] . . . In reality, however, eBay's 'safety' programs have contributed to enormous damage to autographed sports memorabilia consumers. For example, the Feedback Forum allows **anyone** to rate a dealer, even if there has never been a sales transaction between the parties. Thus, Fitzgerald and Scheinman have at least hundreds of Positive Feedback ratings which are unrelated to **any** sales transactions. *Most, if not all, of these Positive Feedback ratings are self-generated or provided by other co-conspiring dealers.*" (Boldface in original, italics added.)

None of these allegations place eBay outside the immunity for service providers. As eBay points out, the allegations reveal that eBay's Feedback Forum is comprised of negative or positive information provided by third party consumers and dealers. Likewise, the star symbol and "Power Sellers" designation is simply a representation of the amount of such positive information received by other users of eBay's Web site. Appellants' negligence claim is based on the assertion that the information is false or misleading because it has been manipulated *by the individual defendants or other co-conspiring parties.* Based on these allegations, enforcing appellants' negligence claim would place liability on eBay for simply compiling false and/or misleading content created by the individual defendants and other coconspirators. We do not see such activities transforming eBay into an information content provider with respect to the representations targeted by appellants as it did not create or develop the underlying misinformation. (E.g., *Ben Ezra, Weinstein, & Co. v. America Online, Inc., supra,* 206 F.3d 980, 985-986 [AOL's communication of errors in stock information provided by other entities, and deletion of stock symbols and other alteration of information from its data base to correct such errors was not "creation or development" of information under § 230's definition of an information content provider].) We are constrained from enforcing such liability under California law because it would treat eBay as the publisher or speaker of the individual defendants' materials, and thereby conflict with section 230.

We reach the same conclusion with regard to appellants' general assertion that eBay knew or should have known about the individual defendant's illegal or fraudulent conduct but failed to take steps to ensure they complied with the law. This claim seeks to hold eBay responsible for having notice of illegal activities conducted by others on its Web site, and for electing not to take action against those third parties, including by withdrawing or somehow altering the content placed by them. This is the classic kind of claim that *Zeran* found to be preempted by section 230, as one that seeks to hold eBay liable for its exercise of a publisher's traditional editorial functions. (*Zeran, supra,* 129 F.3d at p. 330.) Such claims have been uniformly rejected by the courts that have considered them. (E.g., *Doe v. America Online, Inc., supra,* 783 So.2d 1010 [holding plaintiff's negligence claim based on the allegation AOL knew or should have known third parties used its service to distribute child pornography was preempted by § 230]; *Doe One v. Oliver, supra,* 755 A.2d at pp. 1003-1004 [holding plaintiffs failed to state claims upon which relief could be granted for negligence, negligence per se and breach of contract based on AOL's failure to prevent transmission of e-mail because they were precluded by § 230]; *Schneider v. Amazon.com, Inc., supra,* 31 P.3d at pp. 41-42 [holding plaintiffs' claim based on Amazon.com's failure to remove an offensive posting, an "exercise of editorial discretion," was protected under § 230].)

Finally, taking as true the fact eBay makes the statement on its Web site that a positive eBay rating is "worth its weight in gold," such an assertion cannot support a cause of action for negligent misrepresentation regardless of federal statutory immunity because it amounts to a general statement of opinion, not a positive assertion of fact. ■ An essential element of a cause of action for negligent misrepresentation is that the defendant must have made a misrepresentation as to a past or existing material fact. (*Christiansen v. Roddy* (1986) 186 Cal.App.3d 780, 785 [231 Cal.Rptr. 72].) "The law is quite clear that expressions of opinion are not generally treated as representations of fact, and thus are not grounds for a misrepresentation cause of action. [Citations.] Representations of value are opinions. [Citation.]" (*Neu-Visions Sports, Inc. v. Soren/McAdam/Bartells* (2000) 86 Cal.App.4th 303, 308 [103 Cal.Rptr.2d 159], citing BAJI No. 12.32, 5 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 678, pp. 779-780; and Rest.2d Torts, § 538A ["[a] representation is one of opinion if it expresses only [¶] (a) the belief of the maker, without certainty, as to the existence of a fact; or [¶] (b) his judgment as to quality, value, authenticity, or other matters of judgment"].) ■ Although the line of demarcation between expressions of fact and opinion can be unclear at times, this is not such a case. This kind of vague, highly subjective statement as to the significance of a positive rating is not the sort of statement that a consumer would interpret as factual or upon which he or she could reasonably rely.

## IV. *UCL Cause of Action*

Appellants' UCL cause of action is based upon the same allegations as their negligence claim: that eBay misrepresented the forged collectibles offered for sale in its auctions; failed to furnish certificates of authenticity; was aware of the fraudulent nature of the collectibles but failed to disclose such information to consumers; and "made use of various forms of marketing and advertising to falsely advertise, call attention to, endorse, or give publicity to the sale of forged collectibles . . . ." On appeal, appellants argue the sufficiency of only those allegations regarding eBay's safety programs, seeking to distinguish them as statements made by eBay itself. They plead eBay knew or reasonably should have known their marketing and advertising was untrue and/or misleading. For the reasons explained above, because eBay's liability would be based upon the misrepresentations of the individual defendants, to the extent these allegations state a cause of action, it is inconsistent with and barred by section 230.

### DISPOSITION

The judgment is affirmed.

Haller, Acting P. J., and McConnell, J., concurred.

Appellants' petition for review by the Supreme Court was denied October 16, 2002.