Filed 2/18/14  Savoy v. Citimortgage CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| JAMES SAVOY,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>CITIMORTGAGE INC. et al.,<br><br>    Defendants and Respondents. | B242460<br><br>(Los Angeles County<br>Super. Ct. No. BC462587) |

APPEAL from a judgment of the Superior Court of Los Angeles County. Kenneth R. Freeman, Judge.  Affirmed.

James Savoy, in pro. per.

Lewis Brisbois Bisgaard & Smith, Roy G. Weatherup, Daniel G. Bath and Allison A. Arabian for Defendant and Respondent Citimortgage, Inc.

_____

In this action, James Savoy alleges that Phyllis Scott, his childhood friend, fraudulently induced him to help her pay the mortgage on and manage an apartment building she owned. Savoy brought a fraud and wrongful foreclosure action against Scott and Citimortgage, Inc. after Citimortgage foreclosed on the property. The trial court sustained Citimortgage's demurrer to Savoy's first amended complaint without leave to amend. We affirm.

## FACTS

Scott and Savoy were childhood friends. Scott purchased an apartment building located in Los Angeles on June 9, 1999, with Wilson Twain. In or about May 2000, Scott began having financial difficulties and borrowed $4,000 from Savoy's wife to pay the mortgage. She then arranged for Savoy to take over the mortgage payments for the property and manage it. On June 5, 2001, Scott notified Citimortgage that Savoy was "the Operations Manager and business partner of Phyllis Scott and Twain Wilson. He is to have full access to all information and full authority to initiate, implement, or terminate agreements, payments, contracts, etc." She also advised Citimortgate that Savoy had full authority concerning the property and the related mortgage, deed, and trust on February 13, 2002.

Scott promised to repay Savoy for the money and time he put into the property. On January 5, 2005, Scott signed a grant deed granting to Savoy an undivided one-half interest of her share of the property to him. A grant deed reflecting this transfer was recorded on February 25, 2005. In 2006, Savoy stopped managing the property. Scott collected rent from the property and was tasked with distributing Savoy's share to him. A trustee's sale of the property took place on October 15, 2009.

Savoy brought suit against Citimortgage and Scott on May 31, 2011, for fraud and wrongful foreclosure. He sought an accounting, an equitable lien, an order vacating and setting aside the trustee's sale, equitable estoppel, the cancellation of the void trustee's deed upon sale, and quiet title. In addition to alleging the facts above, Savoy alleged that Scott never intended to fulfill her promise to repay him. Savoy alleged that from October 1999 to October 2008, Scott owed Savoy over $500,000, for which the property was

security for the debt. He also alleged various irregularities relating to Citimortgage's foreclosure of the property.

Citimortgage demurred to the complaint on the grounds that it was time-barred and that Savoy had failed to allege sufficient facts to state a cause of action against it. The trial court sustained the demurrer but granted Savoy 20 days to file an amended complaint. Savoy filed a first amended complaint on November 30, 2011, repeating many of the allegations in the initial complaint.

Savoy made additional specific allegations and included exhibits showing the various mortgage payments he made to Citimortgage as well as his correspondence with Citimortgage agents regarding the property. For example, Savoy attached an October 18, 2007 letter from his attorney alerting the servicing company that Savoy was interested in bringing the mortgage current and that he was currently engaged in litigation with the owners over the property. Savoy alleged that his communications with Citimortgage alerted Citimortgage to his equitable interest or lien on the property.

In a separate action, Savoy sued Scott over the property. They entered into a settlement agreement on February 23, 2010. In it, Scott agreed to sign a quitclaim deed transferring her interest in the property to Savoy. Savoy promised to pursue a legal action to obtain title to the property and if he was successful, he agreed to pay Scott $50,000 within one year of obtaining title. Savoy alleged in the first amended complaint that he believed the equitable lien was still in place at the time of the settlement because Scott assured him that the property was still in their names. However, the property had been foreclosed upon in 2009.

Citimortgage's demurrer to the first amended complaint was granted without leave to amend by the trial court on January 31, 2012. Scott filed an answer on July 13, 2012. Judgment was entered in favor of Citimortgage on May 9, 2012. Savoy filed his notice of appeal on July 9, 2012.

## DISCUSSION

### I.  Standard of Review

A demurrer tests whether the complaint states facts sufficient to constitute a cause of action.  (Code Civ. Proc., § 430.10, subd. (e); *Friedland v. City of Long Beach* (1998) 62 Cal.App.4th 835, 841-842.)  To make this determination, the trial court may consider all material facts pleaded in the complaint and matters of which it may take judicial notice, but not contentions, deductions or conclusions of fact or law.  (Code Civ. Proc., § 430.30, subd. (a); *Moore v. Conliffe* (1994) 7 Cal.4th 634, 638.)  "Where the complaint's allegations or judicially noticeable facts reveal the existence of an affirmative defense, the 'plaintiff must "plead around" the defense, by alleging specific facts that would avoid the apparent defense.  Absent such allegations, the complaint is subject to demurrer for failure to state a cause of action . . . .' [Citations.]"  (*Gentry v. eBay, Inc.* (2002) 99 Cal.App.4th 816, 824.)  Our review of a dismissal resulting from a demurrer is de novo.  (*Kong v. City of Hawaiian Gardens Redevelopment Agency* (2002) 108 Cal.App.4th 1028, 1038.)  We review a trial court's decision to deny leave to amend for abuse of discretion.  (*Ibid.*)

### II.  The Demurrer was Properly Sustained

The first cause of action for fraud is asserted only against Scott.  The remaining six causes of action alleged in the first amended complaint are against Citimortgage.  However, it is telling that the bulk of the factual allegations relate to Scott's conduct, not Citimortgage's.  We evaluate the allegations against Citimortgage for each of the causes of action below and conclude that there are insufficient facts alleged to constitute a claim against Citimortgage.

#### A.  Accounting

In the second cause of action for an accounting, Savoy alleged that Scott collected the rents from the property and was obligated to distribute a portion of the rents to Savoy.  Despite his requests, Scott refused to provide Savoy with an accounting of the rents received and the amounts expended for maintenance and repair to the property.  Thus, Savoy alleged he was entitled to an accounting from Scott for these amounts.  None of

4

these allegations relate to Citimortgage.  Savoy has failed to state a cause of action for accounting against Citimortgage.

On appeal, Savoy contends that he alleged there were accounting irregularities in the notice of default and therefore, an accounting was appropriate.  We see no such allegation in the first amended complaint (or the initial complaint).  To the extent Savoy argues that an amendment alleging accounting irregularities by Citimortgage would cure the deficiencies in the first amended complaint, we disagree.  Beyond the bare statement that there were accounting irregularities, Savoy has presented no facts suggesting what those irregularities were or why they would justify an accounting.  Savoy does not contend, for example, that Citimortgage miscalculated the interest or fees or principal amounts due.  Further, an accounting cause of action requires that the plaintiff allege a balance due from the defendant to him.  (*Teselle v. McLoughlin* (2009) 173 Cal.App.4th 156, 179-180; 5 Witkin, Cal. Procedure (5th ed. 2008) Pleading, § 819, p. 236.)  It is certainly not the case here that Citimortgage owes Savoy any sum.

**B.  Equitable Lien**

In the third cause of action, Savoy sought to impose an equitable lien on the property, primarily as a result of Scott's fraudulent promises to him.  As to Citimortgage, he alleged that he was entitled to an equitable lien because, "[e]ven though Citimortgage was placed on notice that Plaintiff was to be notified concerning anything related to the Subject Property, he was no[t] notified of the Trustee's sale of the Subject Property which took place on or about October 13, 2009."

In general, equity will create a lien on property where this is necessary to accomplish substantial justice and protect creditors. Thus, courts will construe the existence of equitable liens where the parties have clearly attempted or intended to make real property security for an obligation (*Grappo v. Coventry Financial Corp.* (1991) 235 Cal.App.3d 496, 510; 4 Witkin, Summary of Cal. Law (10th ed. 2005) Security Transactions in Real Property, § 18, pp. 808-809); or, even in the absence of any agreement, where it is necessary to prevent unjust enrichment (*Smith v. Anglo-California*

5

*Trust Co.* (1928) 205 Cal. 496, 504, overruled on other grounds in *Lucas v. Hamm* (1961) 56 Cal.2d 583, 590-591).

Even if Savoy were entitled to an equitable lien on the property based on Scott's fraud or on Citimortgage's failure to notify him of the trustee's sale, that lien was extinguished by the foreclosure sale. This is because Savoy's lien was subordinate to Citimortgage's trust deed. "Other things being equal, different liens upon the same property have priority according to the time of their creation, except in cases of bottomry and respondentia."[1] (Civil Code, § 2897; 4 Witkin, Summary of Cal. Law (10th ed. 2005) Security Transaction in Real Property, § 48, p. 842.) A junior lien will be extinguished at the foreclosure sale unless the successful bidder purchases at a price sufficient to pay off both the senior lien and the junior lien. (*South Bay Building Enterprises, Inc. v. Riviera Lend-Lease, Inc.* (1999) 72 Cal.App.4th 1111, 1121.) There is no allegation that Citimortgage's trust deed was subordinate to any equitable lien possessed by Savoy. Nor does Savoy allege that Citimortgage purchased the property at a price sufficient to pay off both its loan and Savoy's equitable lien. In fact, Savoy admitted in the first amended complaint that his equitable lien in the property no longer existed after the foreclosure.

## C. Order Vacating and Setting Aside Trustee's Sale

Although Savoy's allegation regarding defective notice of the trustee sale was not sufficient to state a cause of action for an equitable lien, it appears to be part and parcel of his attempt to set aside the trustee's sale and acquire title to the property. In particular, the fourth and fifth causes of action for an order vacating and setting aside the trustee's sale provide no factual allegations except to incorporate his previous allegations. In the

---

[1] Neither bottomry or respondentia apply in this case. "Bottomry is a contract by which a vessel or its freightage is hypothecated as security for a loan, which is to be repaid only if the vessel survives a particular risk, voyage, or period." (Harbors and Navigation Code, § 450.) "Respondentia is a contract by which all or part of a cargo is hypothecated as security for a loan, the repayment of which is dependent on maritime risks." (Harbors and Navigation Code, § 470.)

6

fourth cause of action, for example, Savoy merely alleged that Citimortgage violated California law "as outlined hereinabove."

Even if we accept that Citimortgage improperly failed to provide notice to Savoy, he has failed to allege any of the elements necessary to set aside the foreclosure. In particular, Savoy did not allege he tendered or could tender the full amount of the debt, which was $329,477.09. "An allegation of tender of the indebtedness is necessary when the person seeking to set aside the foreclosure sale asserts the sale is voidable due to irregularities in the sale notice or procedure." (*West v. JPMorgan Chase Bank, N.A.* (2013) 214 Cal.App.4th 780, 801; *Lona v. Citibank, N.A.* (2011) 202 Cal.App.4th 89, 112; *Abdallah v. United Savings Bank* (1996) 43 Cal.App.4th 1101, 1109.) " 'The rationale behind the rule is that if [the borrower] could not have redeemed the property had the sale procedures been proper, any irregularities in the sale did not result in damages to the [plaintiff].' " (*Lona v. Citibank, N.A., supra,* at p. 112.) Although this defect was identified by Citimortgage in its initial demurrer, Savoy made no attempt to cure the deficiency in the first amended complaint. Nor does he contend on appeal that he was able to tender the full amount even if he had been provided notice of the trustee's sale.

### D. Cancellation of Void Trustee's Deed Upon Sale

The sixth cause of action was to cancel the void trustee's deed upon sale pursuant to Civil Code section 2924a. Savoy alleged that "the conduct of the Defendants in procuring the Trustee's Deed Upon Sale and dispossessing Plaintiff of the Subject Property constituted fraudulent misrepresentation, fraud based on promises made without intention to perform, and violations of Civil Code sections 2923.5, 2923.6, 2924 et seq. and 2934a." While the first amended complaint was replete with allegations of Scott's fraudulent promises, it failed to describe any fraud committed by Citimortgage. There were no allegations that any Citimortgage agent made any misrepresentations to Savoy or made any promises to him, much less promises it did not intend to keep.

7

Nor were there any factual allegations regarding how Citimortgage violated the various Civil Code sections identified. Indeed, these Civil Code sections relate to a mortgagee's obligations to its borrower or provide the general requirements involved in a nonjudicial foreclosure. They do not provide Savoy with a cause of action. (Civil Code section 2923.5 [requiring contact with the borrower to assess his financial situation and explore options to avoid foreclosure prior to recording a notice of default]; section 2923.6 [requiring offer of a loan modification to the borrower]; section 2924 [setting forth statutory scheme for nonjudicial foreclosure]; section 2934a [substitution of trustee].)

### E. Quiet Title

In the seventh cause of action, Savoy alleged that he was the "owner in fee simple" of the subject property and that he sought to quiet title in his favor due to the fraudulent and illegal trustee's sale. On appeal, Savoy asserts that he alleged "a prima facie case in order to quiet title to the property, because [he] challenged the legality of the sale." As discussed above, Savoy has failed to allege any facts describing how the trustee's sale was fraudulent or illegal. For this reason, and because he failed to allege tender, Savoy's quiet title claim is defective.

### III. The Trial Court Did Not Abuse its Discretion in Denying Leave to Amend

On appeal, Savoy fails to demonstrate how he would amend to cure the defects in the first amended complaint. To the extent Savoy has presented any new theories of liability in his brief, we have treated these as proposed allegations (e.g., irregularities in accounting). As addressed above, we have concluded they are insufficient to cure the pleading defects in the operative complaint.

In a final attempt to salvage his case against Citimortgage, Savoy complains of an error made by the trial court in sustaining the demurrer as to the second and seventh causes of action. At the hearing on the demurrer to the initial complaint, the Honorable Kenneth R. Freeman presided. Judge Freeman noted that his tentative was to sustain the demurrer as to the third through sixth causes of action and leave the first, second and seventh causes of action in place. Judge Freeman then granted Savoy 20 days to amend. At the hearing on the demurrer to the first amended complaint, the Honorable Joseph

Kalin presided. Judge Kalin sustained Citimortgage's demurrer as to the second through seventh causes of action without leave to amend. Savoy complains on appeal that Judge Kalin should not have sustained the demurrer to the second and seventh causes of action, for an accounting and quiet title, respectively, because they survived demurrer following Judge Freeman's ruling.

As to the second cause of action for an accounting, Savoy's contention lacks merit. In the initial complaint, the second cause of action was solely against Scott. In the first amended complaint, Savoy added Citimortgage to that cause of action. Having materially changed the cause of action, Savoy cannot complain that Judge Kalin made a new ruling as to whether a claim for accounting had been alleged against Citimortgage. As to the seventh cause of action for quiet title, Savoy failed to object at the time Judge Kalin issued his ruling. Savoy has waived his right to complain on appeal. (*Hepner v. Franchise Tax Bd.* (1997) 52 Cal.App.4th 1475, 1486.)

## DISPOSITION

The judgment is affirmed. Respondents are awarded costs on appeal.


BIGELOW, P. J.

We concur:


RUBIN, J.


FLIER, J.


9