Filed 9/18/15  Witkoff v. Topix CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| STEVEN WITKOFF et al.,<br><br>    Plaintiffs and Appellants,<br><br>    v.<br><br>TOPIX, LLC,<br><br>    Defendant and Respondent. | B257656<br><br>(Los Angeles County<br>Super. Ct. No. BC517897)<br><br>ORDER MODIFYING OPINION<br>[NO CHANGE IN JUDGMENT] |

The opinion filed on September 10, 2015, is modified as follows:

On page 2, paragraph 1, line 8, delete "Andrew Park" and insert in its place "Daniel Park."

_____          _____
TURNER, P.J.                                             KRIEGLER, J.

Filed 9/10/15  Witkoff v. Topix CA2/5 (unmodified version)

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| STEVEN WITKOFF et al., | B257656 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC517897) |
| v. | |
| TOPIX, LLC, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Michael M. Johnson, Judge.  Affirmed.

Scheper Kim & Harris, David C. Scheper, Alexander H. Cote and Annah S. Kim for Plaintiffs and Appellants.

Palumbo Bergstrom, Erik D. Buzzard and Justin S. Kim for Defendant and Respondent.

# I. INTRODUCTION

Plaintiffs, Steven and Lauren Witkoff, appeal from a judgment of dismissal of their first amended complaint following an order sustaining a demurrer without leave to amend. Plaintiffs sued defendant, Topix, LLC, for public nuisance under Civil Code sections 3479 and 3480 and the wrongful death of their son. Defendant maintains a Web site, Topix.com, that permits users to communicate regarding various topics. Defendant allegedly created a forum on its website whose subject matter is Oxycodone. Plaintiff's son, Andrew Witkoff,[1] was allegedly in contact with a third-party user of defendant's Web site, the codefendant, Andrew Park, for the purpose of illegally purchasing Oxycodone. Plaintiff's son subsequently overdosed on Oxycodone and died.

Plaintiffs contend defendant by creating a forum for Oxycodone is liable for public nuisance and their son's wrongful death. Defendant demurred to the first amended complaint, contending it is immune from liability under the federal Communications Decency Act, title 47 United States Code section 230(c)(1).[2] Among other things, the Communications Decency Act protects interactive computer service providers from being considered as the publisher of information from third parties. The trial court sustained defendant's demurrer without leave to amend.

Plaintiffs contend the demurrer should have been overruled. They assert they are seeking liability against defendant for its own conduct of creating a forum about Oxycodone in the first instance. They argue section 230(c)(1) does not immunize defendant here from liability for maintaining a public nuisance. We affirm the judgment.

---

[1] Several individuals have the same last name. We will refer to them by their first name for ease of reference. No disrespect is intended.
[2] Further citations to section 230 refer to that section of the Communications Decency Act.

## II. BACKGROUND

### A. First Amended Complaint

On August 12, 2013, plaintiffs filed a complaint against defendant and Daniel Park, an alleged drug dealer, for public nuisance and wrongful death. Defendant demurred, contending they were immune under section 230(c)(1). The hearing on the demurrer was set for February 3, 2014.

Prior to the hearing on the demurrer to the original complaint, on January 9, 2014, plaintiffs filed their first amended complaint. Plaintiffs again asserted a claim for public nuisance and wrongful death against defendant and Mr. Park. Plaintiffs allege the following. Defendant is a limited liability company organized under Delaware law. It has its principal place of business in Palo Alto, California. Defendant owns and operates the Web site Topix.com.

Defendant signed a consent decree with the Attorneys General of 36 states in August 2010. Defendant agreed to improve public safety and continue to cooperate with law enforcement agencies to assist them in combating unlawful activity on its Web site. Plaintiffs asserted defendant failed to meet its consent decree obligations.

Andrew entered a residential drug treatment program in March 2011 located in Los Angeles, California. On August 7, 2011, Andrew executed several Google searches to buy Oxycodone in Los Angeles. The top-ranked result was a Topix.com discussion forum named "Oxycontin, Roxicodone, Oxycodone" (Oxycodone forum). The Oxycodone forum had a discussion thread concerning how to acquire the drug in Los Angeles.

Mr. Park identified himself as a reliable dealer of Oxycodone on this discussion thread. Andrew used the information on that thread to contact Mr. Park. Andrew provided his e-mail address. Mr. Park responded back to Andrew using the e-mail address provided and agreed to the terms of a drug transaction. On August 12, 2011, Mr. Park met Andrew and exchanged drugs for cash. Andrew died two days later due to

3

accidental Oxycodone overdose. Mr. Park plead guilty in federal court to unlawful distribution of narcotics.

Defendant created a feature for Topix.com users in 2005 called "forums" in which users could engage in online discussions called "threads." Defendant created and developed these forums and their subject matter. Topix.com users create the threads, enter comments, and communicate with others. Defendant was, or should have been, aware of a significant number of these forums and comments involving illegal drug trafficking. Defendant is aware drug buyers post evaluations of illegal drugs or controlled substances bought through Topix.com.

Visitors and users of Topix.com can view forum content, create new discussions threads within a forum, and post personal comments without creating a user profile or any other identifiable information. Private messages between users require creation of a profile, which consists only of a username, password, e-mail address, birth date, and Zip Code. Defendant made no effort to verify any of this information. This permits users, including drug traffickers, to create anonymous accounts. Defendant, through its conduct, aids and abets the illegal sale and purchase of drugs. Attached to the first amended complaint are Web views which reveal defendant allowed narcotics trafficking to occur on the Topix.com Web site.

Oxycodone is a Schedule II controlled substance and its distribution is strictly regulated. According to the first amended complaint: drug traffickers sold this controlled substance in an open, notorious and pervasive manner; defendant knew for a considerable period of time about this criminal activity on its Web site and chose to ignore it; defendant's forum was monitored by full time moderators employed by it; and defendant thus knew this forum contained explicit communications involving illegal Oxycodone distribution.

Because defendant aided and abetted the distribution of controlled substances, plaintiffs allege it: had created a public nuisance under Civil Code sections 3479 and 3480; profited from the illegal sale of controlled substances by selling advertising space targeted to its users; and, as an example, there was advertising on the Oxycodone forum

4

depicting a person in great back pain, who would need a powerful painkiller.  After the original filing of this lawsuit, defendant subsequently added a disclaimer to its Web site concerning unlawful distribution of controlled substances via the Internet.  Plaintiffs allege:  defendant was liable for public nuisance and wrongful death; defendant created a nuisance by making a forum that aided illegal drug trafficking; and as a result of its creation of a nuisance, defendant is liable for the wrongful death of their son.  Plaintiffs request as relief compensatory and punitive damages, costs, attorney's fees, and injunctive relief.

## B.  Defendant's Demurrer to First Amended Complaint

On January 14, 2014, defendant demurred to all causes of action in plaintiffs' first amended complaint.  Defendant asserted:  plaintiffs failed to state facts sufficient to constitute a cause of action; it was not liable under the federal Communications Decency Act; and that both state and federal law interpreting the Communications Decency Act immunized it from liability for information posted by third parties.  Plaintiffs responded that they were not seeking liability against defendant for information posted by third parties; defendant, by making the Oxycodone forum available to the public, created a public nuisance; defendant was an information content provider; and liability against defendant for a public nuisance was consistent with section 230(c)(1).

On May 14, 2014, the trial court sustained defendant's demurrer without leave to amend.  The trial court ruled:  defendant had immunity from liability under section 230(c)(1); in part, a consistent line of federal and state cases had granted immunity to Web sites similar to Topix.com; plaintiffs sought to impose liability on defendant based on conduct by third party users of its Web site; and immunity was not granted under section 230(c)(1) only when the Web site operator provided or explicitly required the offending content.  Leave to amend was denied.  Judgment was subsequently entered.

5

We are reviewing an appeal from a judgment entered after an order sustaining a demurrer without leave to amend.  Thus, we apply the following standard of review:  "On appeal from a judgment dismissing an action after sustaining a demurrer without leave to amend, the standard of review is well settled.  We give the complaint a reasonable interpretation, reading it as a whole and its parts in their context.  [Citation.]  Further, we treat the demurrer as admitting all material facts properly pleaded, but do not assume the truth of contentions, deductions or conclusions of law.  [Citations.]  When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action.  [Citation.]  And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment:  if it can be, the trial court has abused its discretion and we reverse."  (*City of Dinuba v. County of Tulare* (2007) 41 Cal.4th 859, 865; accord, *People ex rel. Lungren v. Superior Court* (1996) 14 Cal.4th 294, 300–301; *Moore v. Regents of University of California* (1990) 51 Cal.3d 120, 125.)  Also, because the appeal concerns statutory interpretation questions, our review is de novo as to those matters.  (*Community Youth Athletic Center v. City of National City* (2009) 170 Cal.App.4th 416, 427; *Katz v. Campbell Union High School Dist.* (2006) 144 Cal.App.4th 1024, 1031.)

Section 230(c)(1) provides in relevant part, "No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider."  (*Jones v. Dirty World Entertainment Recordings LLC* (6th Cir. 2014) 755 F.3d 398, 409 ["courts have recognized that § 230 bars a claim if (1) the defendant asserting immunity is an interactive computer service provider, (2) the particular information at issue was provided by another information content provider, and (3) the claim seeks to treat the defendant as a publisher or speaker of that information."]; *Klayman v. Zuckerberg* (C.A.D.C. 2014) 753 F.3d 1354, 1358 ["[A] website does not create or develop content when it merely provides a neutral means by which third parties can post information of their own independent choosing online."];

6

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.* (4th Cir. 2009) 591 F.3d 250, 254 ["State-law plaintiffs may hold liable the person who creates or develops unlawful content, but not the interactive computer service provider who merely enables that content to be posted online."].) This immunity is characterized by the federal courts as broad. (*Johnson v. Arden* (8th Cir. 2010) 614 F.3d 785, 791; *Almeida v. Amazon.com, Inc.* (11th Cir. 2006) 456 F.3d 1316, 1321.); see also *Gentry v. eBay, Inc.* (2002) 99 Cal.App.4th 816, 830 [§ 230(c)(1) immunity requires the defendant be a provider or user of an interactive service; the cause of action treat the defendant as a publisher or speaker of information; and the information at issue is provided by another information content provider].)

Section 230(e)(2) defines an "interactive computer service" as follows: "The term 'interactive computer service' means any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet and such systems operated or services offered by libraries or educational institutions." Plaintiff does not dispute defendant is an interactive computer service. Section 230(e)(3) also defines "information content provider" as follows: "The term 'information content provider' means any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service."

Plaintiffs allege defendant created the Oxycodone forum. Plaintiffs contend defendant is liable as the information content provider at issue in their public nuisance cause of action. Civil Code section 3479 provides in relevant part, "Anything which is injurious to health, including, but not limited to, the illegal sale of controlled substances . . . is a nuisance." Civil Code section 3480 provides, "A public nuisance is one which affects at the same time an entire community or neighborhood, or any considerable number of persons, although the extent of the annoyance or damage inflicted upon individuals may be unequal." As alleged in their first amended complaint, plaintiffs contend defendant by creating the Oxycodone forum is liable for public nuisance.

7

We now turn to the decisional authority construing the section 230(c)(1) immunity.  Our Supreme Court, in interpreting the Communications Decency Act, explained:  "'While we are not bound by decisions of the lower federal courts, even on federal questions, they are persuasive and entitled to great weight.  [Citation.]  Where lower federal precedents are divided or lacking, state courts must necessarily make an independent determination of federal law [citation], but where the decisions of the lower federal courts on a federal question are "both numerous and consistent," we should hesitate to reject their authority [citation].'"  (*Barrett v. Rosenthal* (2006) 40 Cal.4th 33, 58 [fn. omitted.]; *Doe II v. MySpace Inc.* (2009) 175 Cal.App.4th 561, 571 (*Doe II*).)  Our Supreme Court described the opinion in *Zeran v. America Online, Inc.* (4th Cir. 1997) 129 F.3d 327 (*Zeran*), is the leading case on the section 230(c)(1) immunity.  (*Barrett v. Rosenthal*, *supra*, 40 Cal.4th at p. 42.)  We begin our review of the relevant federal decisions there.

In *Zeran*, the plaintiff sued the defendant, America Online, for negligently failing to remove defamatory comments posted against him on a bulletin board by a third party. (*Zeran*, *supra*, 129 F.3d at p. 329.)  The defendant moved for judgment on the pleadings, contending immunity under section 230(c)(1).  (*Ibid.*)  The district court granted the defendant's motion.  (*Id.* at p. 330.)  The United States Court of Appeals for the Fourth Circuit affirmed the judgment.  (*Id.* at p. 328.)

The Fourth Circuit panel held:  "By its plain language, § 230 creates a federal immunity to any cause of action that would make service providers liable for information originating with a third-party user of the service.  Specifically, § 230 precludes courts from entertaining claims that would place a computer service provider in a publisher's role.  Thus, lawsuits seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions—such as deciding whether to publish, withdraw, postpone or alter content –are barred.  [¶]  The purpose of this statutory immunity is not difficult to discern.  Congress recognized the threat that tort-based lawsuits pose to freedom of speech in the new and burgeoning Internet medium.  The imposition of tort liability on service providers for the communications of others

8

represented, for Congress, simply another form of intrusive government regulation of speech. Section 230 was enacted, in part, to maintain the robust nature of Internet communication and, accordingly, to keep government interference in the medium to a minimum." (*Zeran*, *supra*, 129 F.3d at p. 330; see *Jones v. Dirty World Entertainment Recordings LLC supra,* 755 F.3d at p. 407; § 230(e)(3) ["Nothing in this section shall be construed to prevent any State from enforcing any State law that is consistent with this section. No cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section."].)

Other federal appellate courts are in agreement with *Zeran*'s application of section 230(c)(1). In *Doe v. MySpace, Inc.* (5th Cir. 2008) 528 F.3d 413, 418, the United States Court of Appeals for the Fifth Circuit affirmed dismissal of a complaint. The plaintiffs sued the defendants, *MySpace, Inc.* for negligence for failing to implement basic safety measures to protect minors from adult predators. (*Id.* at p. 417.) One of the plaintiffs, a 13-year-old girl, had created a MySpace profile and met a 19-year-old man through the Web site. (*Id.* at p. 416.) The 19-year-old man sexually assaulted her when they met in person. (*Ibid.*) The appellate court construed the plaintiffs' allegations as claiming MySpace was responsible for the publishing of third-party-generated content. (*Id.* at p. 420.)

In a case involving the Craigslist Web site, the United States Court of Appeals for the Seventh Circuit affirmed summary judgment because of the section 230(c)(1) immunity. (*Chicago Lawyers' Committee for Civil Rights Under Law, Inc. v. Craigslist, Inc.* (7th Cir. 2008) 519 F.3d 666 (*Lawyers' Committee*).) The plaintiffs sued the defendant for violation of the federal Fair Housing Act. (*Id.* at p. 668.) Some of the defendant's notices were posting offers of housing for sale or rent that appeared to violate the Fair Housing Act by discriminating based on race, religion or familial status. (*Ibid.*) The defendant argued it was entitled to immunity under section 230(c)(1) and was granted summary judgment. (*Id.* at p. 671.)

The Seventh Circuit affirmed the judgment in the defendant's favor. (*Lawyers' Committee*, *supra*, 519 F.3d at p. 672.) The appellate court explained section 230(c)(1) is

9

not a general immunity against civil liability for Web site operators such as Craigslist. (*Id.* at pp. 669-670.) However, the Seventh Circuit panel held the defendant was not liable for the discriminatory postings: "What § 230(c)(1) says is that an online information system must not 'be treated as the publisher or speaker of any information provided by' someone else. Yet only in a capacity as publisher could craigslist be liable under § 3604(c) [of the Fair Housing Act]. It is not the author of the ads and could not be treated as the 'speaker' of the posters' words, given § 230(c)(1)." (*Lawyers' Committee, supra,* at p. 671.) The appellate court also held the defendant did not "cause" the discriminatory ads: "Doubtless [C]raigslist plays a causal role in the sense that no one could post a discriminatory ad if [C]raigslist did not offer a forum. That is not, however, a useful definition of cause. One might as well say that people who save money 'cause' bank robbery, because if there were no banks there could be no bank robberies. An interactive computer service 'causes' postings only in the sense of providing a place where people can post. Causation in a statute such as § 3604(c) must refer to causing a particular statement to be made, or perhaps the discriminatory content of a statement." (*Lawyers' Committee, supra,* at p. 671.)

California courts have found Web sites immune under section 230(c)(1) regarding several causes of action. Our Supreme Court found immunity under section 230(c)(1) in the context of a defamation suit. (*Barrett v. Rosenthal*, *supra*, 40 Cal.4th at pp. 39-40.) Our Supreme Court held: "[T]he immunity conferred by section 230 applies even when self-regulation is unsuccessful, or completely unattempted. [Citations.]" (*Id.* at p. 53.)

In *Doe II, supra*, 175 Cal.App.4th at page 565, the plaintiffs, through their parents, brought suit against the defendant, MySpace, Inc., for ordinary and gross negligence and strict product liability. The plaintiffs were girls aged 13 to 15 who created profiles on the defendant's Web site. (*Ibid*.) They met adult men through the defendant's Web site who sexually assaulted them. (*Ibid.*) The plaintiffs alleged the defendant's Web site failed to implement reasonable safety precautions to protect young children from sexual predators. (*Ibid*.) The defendant demurred twice, contending they were immune under section 230,

10

subdivision (c)(1).  (*Does II, supra,* at p. 566.)  The trial court sustained the second demurrer without leave to amend.  (*Ibid.*)

The Court of Appeal affirmed the judgment.  (*Doe II*, *supra*, 175 Cal.App.4th at p. 563.)  The Court of Appeal concluded the defendant was not liable for content provided by a third party user.  (*Id.* at pp. 573-574.)  The Court of Appeal also held the defendant was not an information content provider.  (*Id.* at pp. 574-575.)  Other Courts of Appeal have applied the section 230(c)(1) immunity to negligence and other claims.  (See, e.g., *Delfino v. Agilent Technologies, Inc.* (2006) 145 Cal.App.4th 790, 805-808 [defendant entitled to § 230(c)(1) immunity for intentional infliction of emotional distress claim when defendant's former employee sent malicious e-mails to plaintiff]; *Kathleen R. v. City of Livermore* (2001) 87 Cal.App.4th 684, 692 [cause of action for wasting public funds against city library for providing internet access to patrons was precluded by § 230, subd. (c)(1) immunity].)

Plaintiffs try to distinguish their action from the above cited cases.  Plaintiffs contend defendant here is liable because it created the offending content—the Oxycodone forum.  Thus, plaintiffs assert they are bringing a cause of action against defendant as an information content provider.  Plaintiffs contend the allegation that defendant's creation of the Oxycodone forum is sufficient to state a claim for public nuisance.  The plaintiffs rely on *Fair Housing Council of San Fernando Valley v. Roommates.Com, LLC* (9th Cir. 2008) 521 F.3d 1157, 1161-1166 (*Roommates*), in support of their position.

In *Roommates*, *supra*, summary judgment was granted in favor of the defendant based on the section 230, subdivision (c)(1) immunity.  (*Roommates*, *supra*,  at p. 1161, fn. 1.)  The defendant operated a Web site designed to match people renting out spare rooms with persons looking for a place to live.  (*Ibid.*)  The Web site required each party to create a profile and answer specific questions.  (*Ibid.*)  The specific questions required disclosure of the user's sex, sexual orientation and the presence of children in the household.  (*Ibid.*)  The site also encouraged subscribers to provide additional comments describing their desired roommate in an open-ended essay.  (*Ibid.*)  The plaintiffs sued the defendant alleging the foregoing business practices violated the federal and California

11

housing anti-discrimination laws. (*Id.* at p. 1162.) The district court granted the summary judgment motion, holding the defendant was immune under section 230(c)(1). (*Ibid.*)

The United States Court of Appeals for the Ninth Circuit, in an en banc opinion, reversed in part. (*Roommates*, *supra*, 521 F.3d at p. 1176.) The en banc panel ruled the defendant was not immune under section 230(c)(1) for certain actions. First, the appellate court held the defendant, by requiring its subscribers to disclose their sex, familial status and sexual orientation, was the information content provider of the questions. (*Roommates, supra,* at p. 1164.) The appellate court concluded, the defendant had induced third parties to express illegal preferences and thus not immune on this ground. (*Id.* at p. 1165.)

Second, the appellate court ruled that the defendant displayed its subscribers' discriminatory preferences on their profile pages. (*Roommates*, *supra*, 521 F.3d at p. 1165.) The appellate court held: "[T]he part of the profile that is alleged to offend the Fair Housing Act and state housing discrimination laws—the information about sex, family status and sexual orientation—is provided by subscribers in response to Roommate's questions, which they cannot refuse to answer if they want to use defendant's services. By requiring subscribers to provide the information as a condition of accessing its service, and by providing a limited set of pre-populated answers, Roommate becomes much more than a passive transmitter of information provided by others; it becomes the developer, at least in part, of that information. And section 230 provides immunity only if the interactive computer service does not 'creat[e] or develop[]' the information 'in whole or in part.' [Citation.]" (*Id.* at p. 1166.)

This analysis is unpersuasive in the specific context of our case. Plaintiffs seek to hold defendant liable for "the illegal sale of controlled substances" under a nuisance theory. (Civ. Code, § 3479.) In the first amended complaint, plaintiffs allege that defendant aided and abetted illegal drug trafficking by failing to monitor or prohibit such communications. However, the illegal discussions concerning controlled substances that allegedly occurred on defendant's Oxycodone forum derives from third-party threads

12

created by the Web site's users.  There is no allegation that defendant controlled or created the content in the threads.  The gravamen of plaintiffs' allegations is to hold defendant liable as publisher of content from third parties.  Immunity under section 230(c)(1) applies in such situations.  (*Barrett v. Rosenthal*, *supra*, 40 Cal.4th at p. 56; *Lawyers' Committee*, *supra*, 519 F.3d at p. 671.)  As the United States Court of Appeals for the Ninth Circuit explained:  "[W]hat matters is not the name of the cause of action . . . what matters is whether the cause of action inherently requires the court to treat the defendant as the 'publisher or speaker' of content provided by another.  To put it another way, courts must ask whether the duty that the plaintiff alleges the defendant violated derives from the defendant's status or conduct as a 'publisher or speaker.'  If it does, section 230(c)(1) precludes liability."  (*Barnes v. Yahoo!, Inc.* (9th Cir. 2009) 570 F.3d 1096, 1101-1102; accord, *Klayman v. Zuckerberg* (D.D.C. 2012) 910 F.Supp.2d 314, 318-319.)

Unlike the Web site in *Roommates*, *supra,* defendant provides only a forum concerning Oxycodone and the means for its users to create profiles and threads.  The United States Court of Appeals for the Ninth Circuit has held, "Providing neutral tools for navigating websites is fully protected by [the section 230(c)(1)] immunity, absent substantial affirmative conduct on the part of the website creator promoting the use of such tools for unlawful purposes."  (*Roommates*, *supra*, 521 F.3d at p. 1174, fn. 37; see also *Doe II*, *supra*, 175 Cal.App.4th at p. 563 [profile questions did not encourage discriminatory or otherwise illegal conduct]; *Gentry v. eBay, Inc.*, *supra*, 99 Cal.App.4th at p. 831 [Web site granted § 230(c)(1) immunity when users created and provided false information of sports memorabilia]; *Carafano v. Metrosplash.com, Inc.* (9th Cir. 2003) 339 F.3d 1119, 1124 [§ 230(c)(1) immunity granted for Web site; its profile questions facilitated expression of information but selection of content was exclusively done by users].)  There is no allegation that defendant engaged in substantial affirmative conduct to use its neutral tools of thread and profile creation for unlawful drug distribution.

Plaintiffs assert an Oxycodone forum is illegal on its face.  We disagree.  No doubt, the Oxycodone forum contained threads pertaining to illegal drug distribution.

13

But plaintiffs do not allege defendant provided the content of any thread, other than having provided a forum. (*Lawyers' Committee*, *supra*, 519 F.3d at p. 671.) And the Web views attached to the first amended complaint show all of the requests for and offers to sell controlled substances emanated not from defendant. Rather, the criminal conduct was the result of user-input. More to the point, defendant merely published the e-mail involving Mr. Park, the drug trafficker. There is no allegation any of defendant's employees otherwise participated in the transaction.

Though not controlling authority, the federal district court's decision in *Dart v. Craigslist, Inc.* (N.D.Ill. 2009) 665 F.Supp.2d 961, 967-968 is illustrative. The sheriff of Cook County sued the defendant, Craigslist, Inc., for public nuisance, alleging that the "erotic" and "adult" services section facilitated prostitution. (*Ibid*.) The defendant moved for judgment on the pleadings. (*Ibid*.) The district court granted the judgment on the pleadings motion. (*Ibid*.) The district court ruled the defendant was entitled to the section 230(c)(1) immunity because the plaintiff's complaint was construed as one for negligent publishing. (*Id.* at pp. 967-968.) The district court further addressed the plaintiff's additional argument that Craigslist caused or induced the unlawful ads by having an "adult services" category: "We disagree with plaintiff that the 'adult services' section is a special case. The phrase 'adult,' even in conjunction with 'services,' is not unlawful in itself nor does it necessarily call for unlawful content." (*Id.* at p. 968; see *Doe ex rel. Roe v. Backpage.com, LLC* (D.Mass. 2015) __ F.3d __, __ [2015 WL 2340771, *6] ["the allegedly sordid practices of Backpage identified by amici amount to neither affirmative participation in an illegal venture nor active web content creation']; *Huon v. Breaking Media, LLC* (N.D.Ill. 2014) 75 F.Supp.3d. 747, 760 ["[A] website does not incite the posting of unlawful content merely by providing a forum for that content."].)

The same rationale applies here. Oxycodone is a Schedule II controlled substance, which means it can be obtained legally for medical use. (See 21 U.S.C. § 812(b)(2)(B) ["The drug or other substance has a currently accepted medical use in treatment in the United States or a currently accepted medical use with severe restrictions."]; Health &

14

Saf. Code, § 11055, subd. (b)(1)(M).)  Defendant's creation of an Oxycodone forum would encourage discussion of Oxycodone by its users.  Discussion of Oxycodone is not per se illegal.  Defendant is entitled to the section 230(c)(1) immunity as to plaintiffs' claims.  We do not find a reasonable probability that plaintiffs can amend their complaint to state a valid cause of action.  The demurrer was properly sustained without leave to amend.


## IV.  DISPOSITION


The judgment is affirmed.  All parties are to bear their own costs incurred on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS


TURNER, P. J.


We concur:


MOSK, J.


KRIEGLER, J.


15