Filed 3/16/26  Weiss v. Google CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| MAX WEISS,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>GOOGLE LLC et al.,<br><br>    Defendants and Respondents. | D085881<br><br><br>(Super. Ct. No. 37-2024-00021983-CU-BT-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, Joel R. Wohlfeil, Judge.  Affirmed.

Max Weiss, in pro. per, for Plaintiff and Appellant.

Wilson Sonsini Goodrich & Rosati and Amit Q. Gressel for Defendants and Respondents.


Max Weiss filed suit in propria persona against Google LLC and its parent company, Alphabet Inc. (collectively, Google).  Weiss runs Max Marketing Corp., doing business as Private Student Loan Assistance Center, which Weiss advertised on Google's search engine.  According to Weiss's complaint, he began advertising on Google in 2015 and over the years Google

periodically suspended his advertisements for violating its policies related to consumer finance and debt services. Weiss alleges these suspensions were always resolved in his favor and his ads reinstated until May 2024, when Google suspended his ads a final time. As he had in the past, Weiss attempted to have the ads reinstated. When Google refused, Weiss filed the underlying lawsuit.

Google responded to Weiss's complaint with a demurrer, asserting Weiss's claims were barred by Section 230 of the Communications Decency Act of 1996 (CDA) (47 U.S.C. § 230; hereafter, section 230). The trial court sustained the demurrer with leave to amend and Weiss filed an amended complaint. Google demurred on the same grounds and this time the trial court sustained the demurrer without leave to amend, again finding section 230 barred Weiss's claims.

On appeal from the subsequent judgment, Weiss, who remains self-represented, asserts the trial court wrongly concluded his claims are barred by section 230. He argues his claims are based on Google's mischaracterization of his advertisements and that by misclassifying his ads, Google contributed to the content, bringing his claims outside the immunity afforded by section 230. Google responds that the trial court's ruling was correct because Weiss's claims are based solely on Google's decision to exclude Weiss's content, activity that fits squarely within the protection of section 230. As we explain, we agree with Google that the trial court

correctly concluded Weiss's claims are precluded by section 230 and affirm the judgment.[1]

## FACTUAL AND PROCEDURAL BACKGROUND

Private Student Loan Assistance is located in San Diego and operates a website, privatestudentloanassistance.org. The facts in the record concerning the business are sparse. The website states, "If you are one of those individuals that are in default, collections, or are behind/can't afford your Private Student Loan payments, we can help you alleviate this debt and get your life back on track." It also tells visitors, "Tired of calls, threats, and scare tactics from collections agencies? We understand your frustration and have had great success in getting them to stop." And, "If your Private Student Loans are in default, collections or you are behind on payments, chances are your credit has taken a major hit. That hit is not the end of the world. We can explain why so give us a call."

Weiss maintained an account with Google's advertising service, which he refers to as "Google Ads," registered to the Max Marketing Corp. In the operative complaint, Weiss asserts he has run ads on Google since 2015. According to the complaint, beginning that year, Google alerted Weiss that his company's ads violated Google's policies related to debt services and credit. Weiss alleges that in 2021 Google suspended his ads on the grounds of " 'unsubstantiated relationship with third parties or advertised brands as

---

[1] As Google points out, Weiss, in pro per, cannot represent Max Marking Corp. (See *Caressa Camille, Inc. v. Alcoholic Beverage Control Appeals Bd.* (2002) 99 Cal.App.4th 1094, 1101 ["As a general rule, it is well established in California that a corporation cannot represent itself in a court of record either in propria persona or through an officer or agent who is not an attorney."]) Accordingly, to the extent the claims asserted in the operative complaint belong to that corporation and not Weiss personally—which is not made clear in the record before this court—affirmance of the order sustaining the demurrer and subsequent judgment is appropriate on this ground as well.

3

applicable.' " Thereafter, Weiss sent a letter to Google's legal department, and the ads were reinstated. The complaint asserts Weiss also added a disclaimer to his website to prevent further suspensions of his ads, which states: "We do not provide debt settlement/debt management services nor do we provide any credit services, credit repair or offers relating to credit, banking products and services, or any financial planning and management services."

The complaint asserts Weiss's ads were suspended again in September 2022. After attempting to resolve the complaint through Google's online procedures, Weiss sent another demand letter to its legal department. The ads were reinstated in October 2022, only to be suspended again the following month, prompting another demand letter and reinstatement of the ads at the end of November 2022. According to Weiss's complaint, the ads were suspended and reinstated twice more, in April and December 2023. In these instances, Google cited violation of its debt services/credit or consumer finance policies as the basis for the suspensions.

Weiss asserts that on April 12, 2024, "most of [his] ads were 'limited' again due to the 'Consumer Finance' policy." According to Weiss, this was in error because the advertisements he ran did not violate Google's policies, and Google should not have removed or limited the ads. Weiss alleged he attempted to have his ads reinstated through Google's internal procedures but was not successful.

On May 13, 2024, Weiss filed his initial complaint asserting claims he labeled as business tort; abuse of power; business disparagement; defamation, libel, or rumor spreading; tortious interference with prospective business relations; misrepresentation; professional negligence; and intentional and negligent infliction of emotional distress. On July 15, 2024,

4

Weiss filed an amended complaint, and Google responded with a demurrer. The court sustained the demurrer, ruling Weiss's claims were barred by section 230.

Weiss filed another amended complaint, asserting the same claims against Google. The claim for "business tort" stated that a "business tort … is any wrongful act committed by or against a business that causes harm." Weiss alleged four business torts against Google, abuse of power; business disparagement, defamation, libel or rumor spreading; tortious interference with prospective business relations; and misrepresentation. The complaint asserted "Google has all the power" and abused that power by "just say[ing] to [Weiss] that [his] services fall under the policies without showing exactly" how and "ignore[ing] the fact of the disclaimer on [Weiss's] website." Weiss asserted Google engaged in "business disparagement, defamation, libel, or rumor spreading" because its staff "has clearly made false statements … to … Google" about Weiss's business, which he again asserted did not violate Google's policies. The complaint stated Google tortiously interfered with Weiss's business both negligently and intentionally by disrupting potential client relationships by preventing him from advertising on Google. The complaint alleged Google engaged in "misrepresentation" by falsely claiming Weiss's advertisements violated its policies.

The complaint asserted Google engaged in professional negligence because Google owed Weiss's company a duty of care in professional dealings that was breached by Google's decision to suspend his advertisements. The complaint also alleged that Google intentionally and negligently inflicted emotional distress by preventing Weiss's company from "getting new business." Finally, the amended complaint added an allegation that Weiss's claims were not barred by section 230 because Google Ads is not a publisher

5

of internet content and Weiss did not sue Google for content posted by other users, only content Weiss himself was attempting to post.

Google demurred to the amended complaint, again asserting Weiss's claims were barred by section 230. Weiss opposed the demurrer, arguing, as he stated in the amended complaint, that section 230 did not apply to his claims because he was suing Google not for third-party content, but based on Google's decision to remove his ads. Weiss also argued that because Google had recently been found to hold a monopoly over search advertising, section 230 did not apply. Google explained in its reply to the demurrer that Weiss fundamentally misunderstood section 230, which barred Weiss's claims in their entirety. Google also asserted that Weiss's claims were barred by its terms of service and that Weiss otherwise failed to state a claim upon which relief could be granted.

On February 14, 2025, the trial court issued its order finding Weiss's claims were barred by section 230. The court stated that Weiss was attempting to hold Google "liable for improperly removing or barring Plaintiff's advertisements on Google's website. However, … Plaintiff improperly seeks to hold Google liable as a publisher of information. Plaintiff seeks to challenge Google's ability to publish, withdraw or take down content, all of which is directly barred by Section 230 of the federal Communications Decency Act (47 U. S. C. [§] 230)." The court also rejected Weiss's argument that "Google's status as a dominant seller of advertising space on its platform" created "an exception to section 230," finding no legal authority to support this assertion.

Thereafter, the trial court entered judgment in favor of Google and Weiss timely appealed.

6

## DISCUSSION

## I

### *Standard of Review*

" 'When reviewing a ruling on a demurrer, we examine de novo whether the complaint alleges facts sufficient to state a cause of action.' [Citations.] ' "We assume the truth of the properly pleaded factual allegations, [and] facts that reasonably can be inferred from those expressly pleaded." [Citation.] But we do not assume the truth of "contentions, deductions, or conclusions of law." ' " (*Wozniak v. YouTube, LLC* (2024) 100 Cal.App.5th 893, 906, as modified on denial of rehg. (Apr. 2, 2024) (*Wozniak*).) " 'We liberally construe the complaint "with a view to substantial justice between the parties," drawing "all reasonable inferences in favor of the asserted claims." ' [Citations.] 'The plaintiff must demonstrate the court erroneously sustained the demurrer and "must show the complaint alleges facts sufficient to establish every element of each cause of action." ' " (*Id.* at p. 907.)

"When a demurrer is sustained without leave to amend, 'we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.] The burden of proving such reasonable possibility is squarely on the plaintiff.' [Citation.] In the context of a demurrer on section 230 grounds, 'when a plaintiff cannot allege enough facts to overcome Section 230 immunity, a plaintiff's claims should be dismissed.' " (*Wozniak, supra*, 100 Cal.App.5th at p. 907.)

7

## II

### *Section 230*

"Section 230 ' "immunizes providers of interactive computer services against liability arising from content created by third parties." ' " (*Wozniak, supra*, 100 Cal.App.5th at p. 907.)  "Congress enacted section 230 'for two basic policy reasons: to promote the free exchange of information and ideas over the internet and to encourage voluntary monitoring for offensive or obscene material.' " (*Hassell v. Bird* (2018) 5 Cal.5th 522, 534 (*Hassell*), quoting *Carafano v. Metrosplash.com, Inc.* (9th Cir. 2003) 339 F.3d 1119, 1122.)

"Section 230(c)(1), which is captioned 'Treatment of publisher or speaker,' states:  'No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider.'  As relevant here, the statute also expressly preempts any state law claims inconsistent with that provision:  'No cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section.'  (§ 230(e)(3).)  Read together these two provisions 'protect from liability (1) a provider or user of an interactive computer service (2) whom a plaintiff seeks to treat, under a state law cause of action, as a publisher or speaker (3) of information provided by another information content provider.' " (*Murphy v. Twitter, Inc.* (2021) 60 Cal.App.5th 12, 24 (*Murphy*).)  " 'Accordingly, section 230 protects an interactive computer service provider's curation of content on its platform from " ' "claims that would place a computer service provider in a publisher's role.  Thus, lawsuits seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions—such as deciding whether to

publish, withdraw, postpone or alter content—are barred." ' " ' "[2]  (*Wozniak, supra*, 100 Cal.App.5th at p. 908.)

"Two California Supreme Court cases, *Hassell, supra*, 5 Cal.5th 522 (plur. opn.) and *Barrett v. Rosenthal* (2006) 40 Cal.4th 33 (*Barrett*), have addressed immunity under section 230, discussing at length statutory interpretation and judicial construction of the statute.  In both cases, our high court concluded section 230 is to be construed broadly in favor of immunity.  (*Hassell*, at p. 544 (plur. opn.) ['broad scope of section 230 immunity' is underscored by 'inclusive language' of § 230(e)(3), which, 'read in connection with section 230(c)(1) and the rest of section 230, conveys an intent to shield Internet intermediaries from the burdens associated with defending against state law claims that treat them as the publisher or speaker of third party content, and from compelled compliance with demands for relief that, when viewed in the context of a plaintiff's allegations, similarly assign them the legal role and responsibilities of a publisher *qua* publisher']; *Barrett*, at p. 39 [immunity provisions within § 230 'have been widely and consistently interpreted to confer broad immunity'].)  California's appellate courts and federal courts have also generally interpreted section

---

[2]      "An 'interactive computer service' is defined in the statute as 'any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet and such systems operated or services offered by libraries or educational institutions.' (§ 230, subd. (f)(2).)  The statute also defines 'information content provider' as 'any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service.'  (§ 230 (f)(3).)"  (*Wozniak, supra*, 100 Cal.App.5th at p. 908.)

230 to confer broad immunity on interactive computer services.[3]  (See *Doe II v. MySpace Inc.* (2009) 175 Cal.App.4th 561, 572 [concluding a 'general consensus to interpret section 230 immunity broadly' could be derived from California and federal court cases]; *Delfino* [*v. Agilent Technologies, Inc.* (2006)] 145 Cal.App.4th [790,] 804; accord, *Doe v. MySpace Inc.* (5th Cir. 2008) 528 F.3d 413, 418*; Carafano v. Metrosplash.com, Inc.* (9th Cir. 2003) 339 F.3d 1119, 1123 ['reviewing courts have treated § 230(c) immunity as quite robust']; but see *Barnes* [*v. Yahoo!, Inc.* (2009)] 570 F.3d [1096,] 1100 [text of § 230(c) 'appears clear that neither this subsection nor any other declares a general immunity from liability deriving from third-party content'].)"  (*Murphy, supra*, 60 Cal.App.5th at pp. 24–25.)

## III

### *Analysis*

As the trial court concluded in sustaining the demurrer, Weiss's claims against Google satisfy all three conditions for immunity under section 230(c)(1).  First, Google is an "interactive computer service" provider.  Weiss does not dispute that Google meets the statutory definition for this term and there is no doubt that Google is an "information service, system, or access software provider that provides or enables computer access by multiple users to a computer server."  (§ 230(f)(2).)

Second, Weiss's claims all seek to hold Google liable for its decision to suspend his advertisements.  As set forth in his briefing before this court and the operative complaint, Weiss asserts Google mischaracterized his content and used that mischaracterization to suspend his account for violating its

---

[3]     "Although federal precedents interpreting section 230 are not binding upon this court, 'where the decisions of the federal courts on a federal question are " ' "both numerous and consistent," we should hesitate to reject their authority.' " ' "  (*Wozniak, supra*, 100 Cal.App.5th at p. 907, fn. 5.)

10

policies.  This conduct forms the basis for every cause of action in the operative complaint.  Put simply, Weiss seeks to adjudicate Google's characterization of his business and its decision to suspend its ads.  However, this conduct, i.e., Google's "refusal to allow certain content on its platform," is "typical publisher conduct protected by section 230" regardless of the reason for that refusal.  (*Murphy, supra*, 60 Cal.App.5th at p. 25.)  As stated, "lawsuits seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions—such as deciding whether to publish, withdraw, postpone or alter content—are barred.' " (*Barrett, supra*, 40 Cal.4th at p. 43; see also *Fair Housing Council v. Roommates.com, LLC* (9th Cir. 2008) 521 F.3d 1157, 1170–1171 ["any activity that can be boiled down to deciding whether to exclude material that third parties seek to post online is perforce immune under section 230"].)  "Courts have found immunity for interactive computer services under section 230 regardless of whether the provider is alleged to have improperly removed objectionable content or failed to remove such content."  (*Murphy, supra*, 60 Cal.App.5th at p. 27, fn. 5; *Barnes v. Yahoo!, Inc., supra*, 570 F.3d at p. 1102, fn. 8 [it is immaterial whether service provider's exercise of publisher's traditional editorial functions "comes in the form of deciding what to publish in the first place or what to remove among the published material"].)

Thus, even if Google's characterization of Weiss's advertisements does not align with Weiss's characterization, section 230 still affords Google immunity from liability for its decision to suspend his content.  As discussed, section 230 affords broad immunity, and Weiss has not presented any legal authority to support his claim that Google's rationale for removing his content undermines that immunity.  (See *Barrett, supra*, 40 Cal.4th at p. 39 [immunity provisions within § 230 "have been widely and consistently

11

interpreted to confer broad immunity"]; *Jameson v. Desta* (2018) 5 Cal.5th 594, 608–609 ["it is a fundamental principle of appellate procedure that a trial court judgment is ordinarily presumed to be correct and the burden is on an appellant to demonstrate, on the basis of the record presented to the appellate court, that the trial court committed an error that justifies reversal of the judgment"].)

"The third prong is also satisfied here, because [Weiss's] claims all concern [Google's] removal of or refusal to publish 'information provided by another information content provider.' An ' "information content provider" ' is defined as 'any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service.' (§ 230(f)(3).)" (*Murphy, supra*, 60 Cal.App.5th at p. 26.) The third prong is satisfied because all the content Weiss claims Google wrongfully suspended was admittedly created by Weiss,

not Google.[4] (See *id*. at p. 31 ["Courts have repeatedly determined that when plaintiffs allege a platform has wrongfully ceased publishing their posts or blocked content, that content constitutes 'information provided by another information content provider' within the meaning of section 230(c)(1)."].)

Weiss argues his case is unlike prior cases affording internet service providers section 230 immunity because those cases involve objectionable content, such as the promotion of terrorism, and his case does not. In support of this argument, he cites *Twitter, Inc. v. Taamneh* (2023) 598 U.S. 471 and *Gonzalez v. Google LLC* (2023) 598 U.S. 617. In these two cases, the plaintiffs—victims of terrorist attacks and their loved ones—sought to hold social media platforms liable for supporting, or aiding and abetting, the terrorist acts. (*Taamneh*, at pp. 477–478; *Gonzalez,* at pp. 619–621.) Neither case, however, addresses section 230 and Weiss provides no explanation of how these cases support reversal here. (See *Taamneh*, at pp. 478, 497–498

---

4    In *Murphy*, which Weiss cites, an individual's posts on Twitter were taken down by the company for violating its "hateful conduct rules." (*Murphy, supra*, 60 Cal.App.5th at p. 17.) The individual brought suit, asserting claims for breach of contract, promissory estoppel, and violation of the Unfair Competition Law "based on allegations that Twitter's actions violated its user agreement with Murphy and hundreds of similarly situated individuals. The trial court sustained Twitter's demurrer to the complaint without leave to amend, concluding Murphy's suit was barred by" section 230. (*Ibid*.) The court rejected Murphy's argument that her claims were based on Twitter's contractual promises, and not for its protected conduct as a publisher. The court held "Murphy's allegations that Twitter 'enforced its Hateful Conduct Policy in a discriminatory and targeted manner' against Murphy and others by removing her tweets and suspending her account amount to attacks on Twitter's interpretation and enforcement of its own general policies rather than breach of a specific promise." (*Id*. at pp. 29–30.) Likewise, here, Weiss seeks to hold Google liable for its enforcement of its own general policies, rather than a breach of a specific promise. Indeed, the operative complaint states explicitly, "Google does not have contracts with its customers."

13

[holding plaintiffs failed to state a claim that the social media companies aided and abetted ISIS under 18 U.S.C. § 2333(a) because the plaintiffs could not assert allegations the companies gave knowing and substantial assistance]; *Gonzalez,* at p. 622 [following *Taamneh* to uphold dismissal of claims for aiding and abetting terrorism and declining to consider the application of § 230].)

Weiss's other arguments are difficult to discern. He states without further explanation or citation to legal authority that Google's mischaracterization of his advertisements equates to Google contributing to the content, bringing the case outside the immunity of section 230. Weiss also states that "Google's AI or Automated flagging system is severely flawed. It is not programmed correctly and makes mistakes. Yet, we don't have laws governing the growing or evolution of AI in any area, let alone for Google Ads." Weiss then asserts that because Google has been found to be a monopoly it has no incentive to fix its system or improve its quality. Weiss also lists his frustrations with Google's customer service and his inability to persuade them to reinstate his ads. He also asserts that Google has permitted a competitor to his business to continue to run ads to his disadvantage.

As an initial matter, we do not agree with Weiss's assertions that his allegations show Google contributed to the advertisements he created. To the contrary, neither the complaint nor his briefing suggests Google participated in the creation of his ads. Google's determination that Weiss's ads violated its general policies is not equivalent to contributing to the ads' content. In addition, Weiss's grievances and statements do not explain why reversal of the trial court's judgment is required. Although we are sympathetic to the difficulties of pursuing a lawsuit as a self-represented litigant, this fact does

14

not relieve Weiss of the obligation to follow the rules of appellate procedure and present reasoned arguments supported by relevant legal authority. (See *Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246–1247 [self-represented litigant "is not exempt from [appellate] rules because he is representing himself on appeal in propria persona. Under the law, a party may choose to act as his or her own attorney. [Citations.] '[S]uch a party is to be treated like any other party and is entitled to the same, but no greater consideration than other litigants and attorneys' "].) Weiss's failure to explain how his allegations bring his claims outside section 230 immunity requires affirmance by this court. (See *Wozniak, supra*, 100 Cal.App.5th at p. 907.)

## DISPOSITION

The judgment is affirmed. Respondent is awarded the costs of appeal.


McCONNELL, P. J.

WE CONCUR:


DATO, J.


KELETY, J.